EDWARD WOLFE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

March 15, 1907.

Nos. 14,932—(136).

**Negligence—Questions for Jury.**

In a personal injury action it is *held* that upon the evidence it was for the jury to determine whether the defendant was negligent, and whether the facts alleged as negligence were the cause of the accident.

Action in the district court for Ramsey county to recover $25,000 for personal injuries. The case was tried before Brill, J., and a jury, which rendered a verdict in favor of the plaintiff for $3,000. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*A. H. Bright* and *Munn & Thygeson,* for appellant.

*Humphrey Barton,* for respondent.

ELLIOTT, J.

Edward Wolfe, a switchman in the employ of the appellant railway company, obtained a verdict against the company for damages caused by the loss of his foot. The appeal is from a judgment entered upon the verdict.

It appears that something happened to the engine with which Wolfe was working, and it became necessary to obtain a bolt in order to make repairs. Not finding one in his own tool box, Wolfe went to another switch engine, which was near by, and stepped upon the footboard in the rear of the engine, and, after searching in the tool box,

turned about and attempted to alight, when he fell or was thrown and was injured. This footboard was such as are usually found on switch engines. It was seven and a half feet long and eleven and three quarters inches wide, and was suspended on strong iron brackets bolted to the tank several inches above the rail. Bolted to the back edge of the board was a strip of the same material, called the "toe guard," which extended four inches above the surface of the foot guard. This toe guard was bolted to the upright part of the bracket, as the footboard was to the bottom part. The footboard extended about fifteen inches beyond the rail, to give the men a safe place to swing off or alight from, or to mount it when the engine was in motion. There was also a hand rail three feet and eight inches above the footboard, extending the width of the tank and substantially the same length as the footboard. The hand rail extended out over the perpendicular face of the toe guard about five inches. The horizontal diameter of the drawbar is thirteen inches, and the center of the draft iron was over the middle of the footboard. From the side of the draft iron to the rail is about twenty two inches.

The plaintiff alleged that the defendant was negligent in allowing this toe guard to be and remain in a dangerous condition. There was a defect or split in the toe guard, which extended from a point at the base on the engineer's side near the middle to a point at the top on the fireman's side about twelve inches from the draft iron. At the point the split made an opening about one-half inch. The point extended from the face of the toe guard about one-half inch, and this point was four inches above the toe guard. Nothing was shown as to when the split occurred, or how long the toe guard had been in this condition; but the board was in evidence, and was examined by the jury.

The plaintiff claimed that, as he was about to alight from the footboard, the bottom part of his trousers was caught on the splinter made by the end of the break or split in the toe guard, and he was thus tripped and thrown. The defendant admitted that there was a split in the toe board, and that the condition had probably existed for some time, but denied that the condition thereby created was dangerous, or was the cause of the plaintiff's fall, and claimed that the plaintiff was guilty of contributory negligence. The appellant did not move for a

new trial, but moved for judgment notwithstanding the verdict. The denial of this motion and the motion to direct a verdict are the only errors assigned.

It is contended that the split in the toe guard was not such a defect as would support the charge of negligence, and that the evidence as a whole was of such a character that a jury could not be permitted properly to find that the accident was caused by the defect. The appellant's contention rests upon the claim that the evidence fails to show with reasonable certainty that the defect in the toe guard was the cause of the accident, and that, even if there is evidence tending to show that it was the cause of the accident, it is of such a nature as to be unworthy of belief.

Whether the company was negligent in allowing the toe guard to be used in its defective condition was a fair question for the jury, and the conclusion might reasonably be that the defect was of such a character that the company should have anticipated that some injury might result therefrom to some of its employees. There is nothing inherently improbable, not to say impossible, in the claim that the accident was caused by the defect in the toe guard. It may be that the plaintiff's fall was caused by the slippery condition of the step, and such is the appellant's contention. But the claims of the parties were submitted to the jury in a very full and fair charge, and there was evidence tending to sustain the plaintiff's theory as to the cause of the accident. His testimony may or may not have been worthy of belief. It was for the jury to say. We cannot agree with counsel that it is contrary to physical facts, and that the trial judge "permitted the jury to exercise an arbitrary power or an imbecile credulity in accepting as true the statements of plaintiff."

No good purpose can be accomplished by reviewing the evidence in detail. There was evidence sufficient to justify the court in sending the case to the jury, and the defendant's motion for judgment notwithstanding the verdict was therefore properly denied.

Judgment affirmed.