## BARNEY A. MILLER v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

April 5, 1918.

No. 20,745.

**Master and servant — negligence — assumption of risk — questions for jury.**

1. The plaintiff, a switch-foreman, rode on a rod or bar extending across the front of the engine with his back to the boiler, and in getting down to the foot board caught the clothing of one leg in the jagged end of a bar extending above and in the same direction as the footboard and projecting slightly beyond an upright brace to which it was fastened, and was thrown and injured. He was engaged at the time in the discharge of his duties and the place in which he was riding was one customarily used by switchmen. It is *held* that whether there was negligence of the defendant in respect of the projecting jagged end of the bar proximately causing the injury and whether the plaintiff assumed the risk were questions for the jury.

**Same — Federal act inapplicable.**

2. The Federal statute (36 St. 913), referring to locomotive boilers, is without application.

Action in the district court for Ramsey county to recover $25,000 for injuries received while switchman in defendant's employ and $250 for surgical expenses. The answer alleged the injury was caused by plaintiff's negligence, that the physical conditions attending the work done by plaintiff were observable and that plaintiff knew and appreciated the risk. The case was tried before Michael, J., who at the close of the evidence granted defendant's motion for a directed verdict. From an

[1]Reported in 167 N. W. 117.

order denying his motion for a new trial, plaintiff appealed.  Reversed.

*Barton & Kay,* for appellant.

*Barrows & Stewart,* for respondent.

DIBELL, C.

Action for personal injuries.  A verdict was directed for the defendant.  The plaintiff appeals from the order denying his motion for a new trial.

1.  The plaintiff was employed by the defendant as foreman of a switching crew in its Dayton's Bluff yards in St. Paul.  Between one and two o'clock of the morning of December 4, 1916, he was taking a drag of cars from the Burlington yards to the Great Northern yards, a distance of some three miles.  He got onto the footboard at the head end of his engine, next to the first car, the engine moving in backward motion.  The yard clerk had given him an envelope containing the waybills showing the car destinations but had not marked, as was his custom, the destinations on the outside.  To check them over conveniently he assumed a position on a rod or bar running across the front end of the engine with his back toward the boiler and his feet resting on the coupler plate.  In getting down he put his right foot onto the footboard and in getting his left down his underdrawers, his trousers being rolled high, caught in the jagged end of a bar or brace extending in the same direction as the footboard, and some little distance above it, and he was thrown from the engine and injured.  This jagged end projected slightly, perhaps an inch, beyond the upright to which it was bolted and toward the open space about the drawhead.  The situation is not easy of description but it is clear at a glance, except as to distances, upon reference to the photograph attached to the defendant's brief.

If the plaintiff had been injured when making ordinary use of the footboard the question of the defendant's negligence in respect of the jagged projection would at least have been for the jury. Wolfe v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 100 Minn. 306, 111 N. W. 5.  The jury might readily enough have found that the plaintiff assumed his position on the front end of the engine in furtherance of the company's business and that his act was in itself proper and usual.  In the

evidence before us there is no denial of it. His testimony is that switchmen rode there all the time. "Oh, yes, they ride there all the time" are his words. And on cross-examination he says: "Oh, yes, sir, we ride on the engine always like that." He testifies that he adopted the usual way in getting down to the footboard. In this condition of the record it was for the jury to find whether there was negligence of the defendant proximately causing the injury and whether the plaintiff assumed the risk. The views stated are those of the majority of the court. The view of a minority is that the direction of verdict should be sustained.

2. In view of a new trial it is proper to say that we agree with the trial court that the Federal statute of February 17, 1911 (36 St. 913), referring to locomotive boilers, their inspection, etc., is without application.

Order reversed.