JAMES B. FRYE v. CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY.[1]

November 2, 1923.

No. 23,575.

**Federal Boiler Inspection Act applies to safety device.**

1. A safety device, which is a part of the equipment of a tender attached to a locomotive engaged in interstate commerce, is subject to the application of the Federal Boiler Inspection Act (chapter 169, 38 St. 1192), when the handle thereof assumes an abnormal and dangerous position when at rest and not in use, even though it will properly perform its function when in use.

**Liberal construction of safety appliance acts.**

2. Federal safety appliance acts are to be construed liberally.

**Case distinguished.**

3. The case of Miller v. Chicago, B. & Q. R. Co. 140 Minn. 14, does not decide the applicability of the act of March 4, 1915 (chapter 169, 38 St. 1192).

**Nonresident entitled to redress in Minnesota courts.**

4. A citizen of a foreign state has the legal right to prosecute in the courts in this state an action against a common carrier, who is

[1]Reported in 195 N. W. 629.

engaged in business in this state, to recover for personal injuries received by him in another state as an employe of such carrier while engaged in interstate commerce and he cannot be denied this right because the court in the state where he has received his injuries has entered a judgment in equity restraining his prosecuting such action in the courts in this state.

**New trial denied.**
5. The evidence does not so predominate in favor of appellant as to justify granting a new trial.

**Verdict of $15,000 not excessive.**
6. Upon an examination of the record it cannot be said that the damages are excessive.

Action in the district court for Hennepin county to recover $30,000 for personal injuries. The case was tried before Montgomery, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $15,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*O'Brien, Horn & Stringer,* for appellant.

*George C. Stiles* and *F. M. Miner,* for respondent.

WILSON, C. J.

This is an action to recover for personal injuries sustained by the plaintiff at Davenport, Iowa, which he claims to have suffered, while in the employment of the defendant railroad company, as a railway switch foreman, at a time when the parties were engaging in interstate commerce.

Plaintiff claims that at said time defendant, in violation of its duty imposed by an act of Congress, maintained upon the end of a tender attached to a switch engine, a coupling device which was imperfect, inoperative and dangerous to employes, in this: That said coupler was operated by means of a lever or rod extending along the end of said tender to the outer corner thereof, where the same was bent in a downward direction, the bent-downward portion being from 4 to 6 inches in length and bending toward the sill or the beam

of said tender, such last projection being about 2 inches in length, so that, when said lever or rod was in proper position, and at rest, the last described projection on the end thereof would come in contact with the sill of said tender, thereby causing the handle part of said lever to be out and away from said sill a convenient distance, so that the hand of an operative in attempting to take hold of said lever would not come in contact with the sill of said tender. That, in the center of said rod and over said coupler-head, said lever was attached to the lift pin which operates and throws open the knuckle in the coupler, by a chain or link so attached to said coupler pin and said lever: That when by the use of said lever said pin was lifted, throwing the knuckle in said coupler open, such chain or link attachment between said pin and said lever would not permit the handle on the end of said lever to drop back to a downward position, but, on the contrary, would cause said lever, when the knuckle was open, to remain in a position where such handle on the end of said lever with the hook or bent end thereof to extend outward from the end of said tender or the sill thereof at right angles thereto, so that the same, when said knuckle was open, would extend out and over the foot-board on the end of said tender upon which men were required to be at different times when in the performance of their duties when switching with said engine and tender, and, by reason thereof, employes of defendant, in doing their work, would necessarily be in danger and would be liable to catch some part of their clothing upon said projecting handle and by means thereof be thrown from said foot-board and injured.

It is the claim of the plaintiff that, while engaged in the active and faithful performance of his duties as switching foreman, working with said engine and in making up an interstate train, he was on the foot-board of said engine as the same was moving about in the yard and near the left-hand side of said engine, considering the direction in which the engine was being so operated, as the same was being operated in a backward direction, when it became necessary for him to step from said foot-board for the purpose of lining the switch in order to enable the engine to move in the performance of the duties which the crew were then performing, and that, be-

cause of said alleged defective appliance, the said handle of the lever of said device, which was projecting outward at right angles from the sill of said tank, caught the plaintiff as he was attempting to alight from said foot-board in a proper and customary manner, catching in the pocket of plaintiff's top coat, causing plaintiff to be suddenly jerked from the foot-board, throwing him downward and upon the ground in such manner as to cause him to suffer severe and serious injuries.

Issue was joined and the case tried to a jury which rendered a verdict in favor of the plaintiff for $15,000.

The defendant made an alternative motion for judgment notwithstanding the verdict or for a new trial and has now appealed to this court from an order denying such motion.

The trial court held that this action was subject to the application of the Federal Boiler Inspection Act, and hence eliminated assumption of risk and contributory negligence as defenses.

Appellant now urges: (1) That no violation of the Federal Boiler Inspection Act was shown, and that, if any negligence was shown, it must be based upon common law principles; (2) that the trial court should have refused to try this case at all because of an Iowa injunction; (3) that the evidence so preponderated in favor of the defendant that the court should have granted a new trial, as a matter of discretion; (4) that the damages are excessive.

1. Our first inquiry is as to whether or not chapter 169, 38 Stat. 1192, being the Boiler Inspection Act, applies to the facts in this case. Plaintiff claims that it does, and defendant contends that it does not; and defendant says that, if there is any liability in this case, it must be predicated upon a common law liability, and it, then, may have the benefit of the defenses of assumption of risk and contributory negligence, which defenses are not available under the Federal Act.

Chapter 196, 27 St. 531 (Act of March 2, 1893), being the original Safety Appliance Act requiring driving wheel brakes, couplers coupling automatically by impact, and secure grab-irons and handholds, was amended April 14, 1910, by chapter 160, 36 St. 298, so as to include the requirement of secure steel steps, efficient hand

brakes, secure ladders and running boards, and secure hand-holds and grab-irons on the top of the cars.

On February 17, 1911, chapter 103, 36 St. 913, became a law, and by section 2 thereof it is made unlawful for a railroad company "to use any locomotive engine propelled by steam power in moving inter-state or foreign traffic unless the boiler of said locomotive and ap-purtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be em-ployed in the active service of such carrier in moving traffic without unnecessary peril to life or limb." By the act of Congress of March 4, 1915, chapter 169, 38 St. 1192, the Act of February 17, 1911, above set forth, and its requirements, are extended to "apply to and include the entire locomotive and tender and all parts and appurtenances thereof."

Appellant takes the position that the requirement of this law as contained in the language "in proper condition and safe to operate in the service to which the same is put," is to be construed, in a lim-ited way, so that if the device will work properly for the purpose intended it is sufficient; and that there is nothing in the act of Con-gress which gives rise to an action for personal injuries because of the use of a defective instrumentality upon an engine, provided that it is not defective for the purpose for which it is intended. Apply-ing this line of reasoning to the instant case, it is urged that there is no claim that the pin lifter did not efficiently perform its functions in lifting the pin; and that if this pin lifter was dangerous at all it was only when it was put to no service at all, and hence, if there was any negligence in the case, it would arise because of common law principles. It is only fair to say that the record seems to justify their statement of fact as to the efficiency of the pin lifter in lifting the pin. After the pin was lifted, however, the equipment did not permit the handle to resume its normal place of safety, but left it projecting as a mute object of danger that might do just what the jury found it did do in this case.

We prefer to place a more liberal construction on the language involved and hold that the handle of the bar operating the lifting pin is a material and necessary part of the entire device and that

the projecting part, the handle, when not in actual operation was, nevertheless, subject to the provisions of the Federal act, and that when it is defective in the links of the chain so as not to assume its normal position when not in use, even though it will properly lift the pin when in use, it is fairly within the purview of the statute.

The humane and beneficent purposes of these safety appliance acts require us to hold, as we do, that these amendments must be liberally construed and their obvious purposes effectuated. Hines v. Smith (C. C. A.) 275 Fed. 766. Their purpose is to promote the safety of employes and travelers upon railroads. To the extent that the employes are concerned, these acts were intended, not to increase the difficulty of getting compensation for injuries sustained, but to decrease the number of cases in which injuries would happen. Such purpose must not be defeated, nor even diminished, by a strained construction, but such law should, so far as reasonably possible, be construed in a way that will accomplish the intended purpose. Johnson v. Southern Pac. Co. 196 U. S. 1, 25 Sup. Ct. 158, 49 L. ed. 363.

The case of Miller v. Chicago, B. & Q. R. Co. 140 Minn. 14, 167 N. W. 117, is referred to in the briefs of counsel in this case and it is claimed that, by that decision, this court has held that the Federal acts above referred to had no application to the facts in that case. The opinion in the Miller case refers specifically to the Federal statute of February 17, 1911 (36 St. 913). The record in the Miller case fails to show that the Federal act of March 4, 1915 (chapter 169, 38 St. 1192), was in any way mentioned when that case was before this court, and, the specific reference to the prior act, to the entire exclusion of the latter, leads us to say that that case cannot be regarded as having any bearing upon the application of the act of 1915.

We therefore answer our first inquiry in the affirmative, and hence the trial court was right in ignoring assumption of risk and contributory negligence as defenses.

2. When this action was called for trial, the defendant moved the court to refuse to take jurisdiction of the action on the ground that the prosecution of this action within the state of Minnesota had been enjoined by the district court of Scott county, Iowa, in an

equity action brought there by defendant, and, in connection therewith, offered in evidence an exemplified copy of the record in that case duly certified as provided by Federal statute, and the trial court denied this motion.

It is now claimed, as it was at the trial of this action, that the courts of this state must give full faith and credit to this judgment of a sister state, and that the failure of the court to grant this motion was a violation of defendant's rights under the Federal Constitution requiring the court to give full faith and credit to all judgments and judicial proceedings of the courts of record of another state. This suggestion has had our consideration, but the particular question has heretofore been determined by this court contrary to the views of appellant. State ex rel. Bossung v. District Court, 140 Minn. 494, 168 N. W. 589, 1 A. L. R. 145.

3. The claim that the evidence so predominated in favor of defendant that the court should have granted a new trial, as a matter of discretion, cannot have the approval of this court. The learned trial court fairly and clearly submitted this case to a jury, and there is ample evidence to support the verdict of the jury.

This court, under the well recognized rules, would not be justified in setting aside this verdict which is not palpably against the evidence.

4. Are the damages excessive? Plaintiff was an able-bodied man 47 years old and earning from $150 to $170 per month. He had been in the railway service for many years. His injuries were serious. A portion of the hip bone was broken away and disunited from the main body of the pelvis, leaving a lateral outward displacement. He suffered a hernia which will diminish his motor activity, and which is of that character that it probably cannot be improved by surgery for lack of nerve supply. The use of the leg is impaired to the extent of 50 per cent. The muscles and their attachments in the leg are injured. This weakens the fascia and muscles attached to the crest of the ilium running down the leg and around the back so that free motion and full power in this region is seriously diminished. These injuries are permanent. They dis-

qualify him from the usual railway work that has heretofore had his service.  He has necessarily had pain and suffering.

What then will justly compensate this man for these injuries?  The law does not lay down any hard and fast rule by which such inquiry may be answered.  It rather passes this question to 12 persons in the jury box for their determination by their composite judgment.  We have their conclusion in this case and we cannot say that it is excessive.

Order affirmed.

STONE, J., having been of counsel, did not sit.

## ON APPEAL FROM JUDGMENT.

On December 10, 1923, the following opinion was filed:

PER CURIAM.

This is an appeal by the defendant from a judgment of the Hennepin county district court entered upon a verdict in favor of the plaintiff in an action for personal injuries based upon the Federal Safety Appliance Act.  The questions presented are those decided by this court on an appeal from an order denying plaintiff's motion for a new trial, which decision of this court was filed on November 2, 1923, and immediately precedes this opinion.  Following the decision in that case, the judgment above referred to is affirmed.

Judgment affirmed.