In the matter of the application for the guardianship of CLAYTON ELMER, an infant.

[Decided February 6th, 1939.]

On appeal from an order of the court of chancery advised by Advisory Master Grosman, who filed the following opinion:

"This is an application by Lloyd A. Elmer of New York for the custody of his infant son, Clayton Elmer, twelve years of age. The proceedings are instituted by petition, presumably under an act of the legislature of the State of New Jersey, entitled "An act concerning minors." *R. S. 9:2,* formerly *P. L. 1902 ch. 92 p. 263 (Comp. Stat. p. 2809 §§ 18 et seq).* The pleadings are very inartificially drawn, but they suffice for the purpose.

"The record and statements of counsel in open court disclose that the petitioner obtained a divorce from his wife, Helen F. Elmer, now deceased, on the 9th day of June, 1937 (Docket 99, page 379). The custody of the child was awarded to the mother and the petitioner was directed to pay the sum of $150 per month for his maintenance. The petitioner herein has strenuously resisted compliance with this portion of the decree from the beginning. Even when his former wife was stricken with cancer, of which she died, he refused to comply with our decree and make said payments. He was cited in contempt. He fled the jurisdiction of this court by removing himself to the State of New York, where he is presently domiciled. The child became the object of charity. Petitioner was indicted by the Essex county grand jury for his abandonment. He was apprehended in New York and upon his earnest promise to comply with the decree of this court for the child's maintenance he obtained his freedom from arrest. He failed to keep his word and permitted the child to continue in want. Further proceedings were instituted against him in connection with the maintenance of the child and for a long period of time he successfully evaded service of process.

"On February 16th, 1938, his former wife died in the Montclair Community Hospital in the town of Montclair, New Jersey. The child continued to live with Mr. and Mrs. Alton S. Hill, who had cared for him during his mother's illness and who still maintain him. On March 22d, 1938, approximately five weeks after the mother's death, the petitioner instituted these proceedings for the custody of his son. At that time he was in arrears some $1,500 for the child's maintenance. Throughout this entire period the petitioner was employed as a research engineer by the Bell Telephone Laboratories of New York, at a salary of $100 per week. It is clear from these facts that the petitioner was at all times in a position to comply with the decree of this court and his failure to do so was willful and contemptuous. There is nothing whatever in the past conduct of the petitioner to recommend him to the consideration of this court. Irrespec-

tive of his feelings towards his former wife, he was clearly aware that the award contained in our decree, though payable to the child's mother, was for the child's maintenance. Nevertheless, either because of animus towards his former spouse or through plain niggardliness, he refused to make the required payments, though he knew that the child's mother was suffering from a fatal malady and that his own son was in want and though at all times he was fully able to make said payments. Under the circumstances, I will not entertain the petitioner's application until he has fully complied with the order of this court and paid his arrearages thereunder in full. *Freese* v. *Swayze, 26 N. J. Eq. 437; Cooper* v. *Cooper, 103 N. J. Eq. 416.* The decree, of course, provides that the money be paid to the child's mother. She being now deceased, payment may be made to a guardian to be appointed for said child, who will be authorized to reimburse those kindly disposed persons who have advanced money for the child's maintenance during the father's default.

"Though I have come to this conclusion, nevertheless, I have not failed to concern myself with the child's welfare. I find that he is living with Mr. and Mrs. Alton S. Hill, of Dunellen, New Jersey, to whose care he was entrusted by his late mother. They are decent people who have shown the utmost kindness towards the infant and have supplied him not only with sustenance but with affection. The infant is an intelligent, highly sensitive boy of twelve. I have spoken to him privately. He is terror stricken at the thought of being required to go with his father. He ascribes as reason for his feeling a firm conviction that his father has no love or regard for him and that if his custody is awarded to him he will send him to his grandparents in Minnesota, where he has no desire to go. He states that he is being treated with kindness and consideration by Mr. and Mrs. Hill and desires to remain with them. He has freely stated his attitude towards his father in open court, and under the circumstances I do not think that this boy should be forcibly removed from people who have been kind to him and turned over to his father for whom he has no regard or affection.

"The principal consideration of this court is the welfare of the child. It is not only regrettable, but unfortunate, that this boy who has been deprived of his mother's solicitude by death, should also be lacking in fatherly supervision and affection. If the petitioner really desires to become reconciled with his son and win his regard and affection, I propose to do everything in my power to afford him an opportunity to do so. Pending the petitioner's compliance with our decree, if he will post a bond conditioned that he will not attempt to remove the child from our jurisdiction without the order of this court, I will afford him the widest latitude of visitation so that he may, by kindness and persuasion, induce his son to go with him. A somewhat similar practice was adopted by Vice-Chancellor Leaming in the case of *Willis* v. *Willis, 118 Atl. Rep. 333.* I will not, however, coerce this child, who has been abandoned by his father to go with him against his will. The death of the mother to whose custody the child was awarded by the decree of this court does not automatically operate to revert the custody of said minor to the father. ('An act concerning minors,' *R. S. 9:2-5.*) The child will remain with Mr. and Mrs. Hill until our further order. When the petitioner has complied with the decree of this court, I will consider his petition for custody on its merits."

*Mr. Abraham S. Bernstein,* for the appellant.

*Messrs. Kapp Brothers,* for the respondents.

PER CURIAM.

The order appealed from will be affirmed, for the reasons stated in the opinion filed in the court of chancery by Advisory Master Grosman.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, CASE, BODINE, DONGES, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.

*For reversal*—PARKER, HEHER, JJ. 2.