32 N.J. Super. 460 (1954)
108 A.2d 664
IN THE MATTER OF THE GUARDIANSHIP OF DAVID WILLIAM HOPPE, A MINOR.
Superior Court of New Jersey, Bergen County Court, Probate Division.
Decided October 19, 1954.
*461 Mr. Joseph F. Kearney, attorney for Mae E. Gross, testamentary guardian.
Mr. Joseph L. Kramer, attorney for William Eckel, guardian.
CAVINATO, J.C.C.
On February 18, 1954 the Surrogate of Bergen County appointed William Eckel the guardian of the person and property of his grandchild, David William Hoppe, who will be 16 years of age in November 1954.
On February 27, 1954 said surrogate admitted to probate the last will and testament of William B. Hoppe, the father of said infant. Paragraph Fourth of this will provides:
"Fourth:  If at the time of my decease, my son shall be under the age of twenty-one (21) years, then and in that event it is my wish and I so direct that my good friend, MAE E. GROSS, be appointed Guardian of my said son."
*462 This action is brought by Mrs. Mae E. Gross to remove William Eckel as guardian and for the appointment of herself as testamentary guardian. The infant is now living with his maternal grandparent, William Eckel, with whom he has been residing since his father's death, February 10, 1954.
The statutory authority for the court's consideration of the issue presented appears in N.J.S. 3A:6-23, which provides:
"If a will appointing a testamentary guardian has been or is to be probated in the surrogate's or county court of any county, the county court of the county may, in an action brought upon notice to the guardian named in the will, inquire into the present custody of the minor, and make such order touching the testamentary guardianship as may be for the best interest and welfare of the minor."
In the leading case of Lippincott v. Lippincott, 97 N.J. Eq. 517 (E. & A. 1925), involving the appointment of a guardian of his infant child by an instrument which the court held was similar to the appointment of a guardian in a last will and testament, the court held that such an instrument of appointment does not prevent the disposition of the custody of the infant according to its best interest. This rule has prevailed. The court further stated in the Lippincott case that even the natural right of the father to the custody of his child cannot be treated as an absolute property right but rather as a trust reposed in the father by the State, as "parens patriae," for the welfare of the infant.
The Legislature has even in controversies between parents provided that the rights of both parents, in the absence of misconduct, shall be held to be equal, and the happiness and welfare of the child shall determine the custody or possession. N.J.S.A. 9:2-4.
The court must consider that the disposition of the custody of a child is not the disposition of the possession of a chattel but rather the dealing with a human being. This same rule should apply and does apply even in controversies among strangers.
"The court may make the necessary orders and judgments from time to time in relation to such custody or possession, but the father, *463 as such, shall not have preference over the mother as to the award of custody of such minor child if the best interests of the child otherwise may be protected, * * *." N.J.S.A. 9:2-4.
Likewise the right of the guardian appointed under the will shall be considered in the light of what is for the best interest of the child.
In the case at bar, considering the age, demeanor and appearance of the child and the relationship of the parties, the court permitted the examination of the infant child, David William Hoppe, in open court by counsel to ascertain his predilection as to his custody and the child expressed a positive preference for his maternal grandfather.
The preference of a young child has a place, although not a conclusive place in the determination. Giffin v. Gascoigne, 60 N.J. Eq. 256, 259 (Ch. 1900).
In Gardner v. Hall, 132 N.J. Eq. 64 (Ch. 1942), under the title "Welfare and Happiness of Child," the court held:
"* * * The statutes do not, of course, in a proper proceeding to that end, prevent a disposition of custody according to the best interests of the infant. `In dealing with the custody and control of infants, their welfare and happiness, and not filial affections, is the primary consideration. The natural right of the father (parent) to the custody of his child is not an absolute property right, but rather a trust reposed in the father (parent) by the state as parens patriae' * * *." Citing In re Lippincott, supra; In re Elmer's Guardianship, 125 N.J. Eq. 148 (E. & A. 1939).
In resolving the general question of what will best subserve the interest and happiness of the child, its own wish and choice may be considered and given weight, if it be of an age and capacity to form a rational judgment. "There is no fixed age which capacitates such choice. It depends upon the extent of its mental development." Richards v. Collins, 45 N.J. Eq. 283, 297 (E. & A. 1889).
The infant who from the testimony lived with his father and under the supervision of the housekeeper, Mrs. Mae Gross, for approximately one year, immediately upon the death of his father went to live with his maternal grandfather with whom he has been for approximately eight months. The infant in open court has also expressed a refusal to live with Mrs. Mae Gross.
*464 Since the modern tendency of the courts in the matter of custody is governed primarily with the doing of that which will best serve the interest of the infant, notwithstanding the presence of a naked legal right upon one side and a lesser right of the same nature or the absence of any legal right upon the other, it is necessary for the court to determine whether the granting of custody to the one without the legal right will be prejudicial to the welfare of the infant.
From the testimony of the infant, I find that he does not wish to leave his maternal grandfather and go to live with his father's housekeeper, who is named as testamentary guardian in his late father's will.
I find that his grandfather is financially able to support the said infant and has set aside a fund for his college education as against a lack of financial means on the part of the testamentary guardian.
I find that the grandfather is of the same religion as the infant, whereas the testamentary guardian is not. I find that there is great affection between the infant and his grandfather and that since the infant has been living with his grandfather his scholastic ratings have improved, his deportment in the community has improved, and his difficulties have come to an end.
The weight of the authority in this State as expressed in Ross' Case, In re Ross, 53 N.J. Eq. 344, 35 A. 48 (Prerog. 1896), is that the guardianship of an infant's person will not be awarded to one and the guardianship of his estate to another, except in the case of great hardship.
I find upon a complete review of all the testimony in this case and upon the positive feeling expressed by the infant who is approximately 16 years of age with adequate intelligence and a full realization of the choice that he is making in favor of his maternal grandfather, that the guardian of the infant's person and of his estate be granted to his maternal grandfather, William Eckel, and that the testamentary guardianship of the person and property of the infant to Mrs. Mae E. Gross be denied.
An order in conformance with this opinion should be submitted.