[S. F. No. 19740. In Bank. Nov. 14, 1958.]

BROOKEE KUBON, Appellant, v. WALTER KUBON, Respondent.

Robert W. Corlett for Appellant.

Bruce B. Bales for Respondent.

McCOMB, J.—Plaintiff appeals from a judgment denying her recovery on a Nevada money judgment which was based on orders in a divorce decree requiring defendant to pay support for their two minor children. The appeal is on the judgment roll and certain exhibits of a documentary nature that were requested in the notice of appeal as provided in rule 5a of the Rules on Appeal (36 Cal.2d 5).

The record discloses the following:

i. March 27, 1952, the parties were divorced in the District Court of Clark County, Nevada, which court had personal jurisdiction of the parties. Pursuant to an agreement between them, their property rights were settled and legal custody of the two minor children was given to both, physical custody being awarded to plaintiff. Defendant was ordered to pay $100 per month for child support. The court reserved ''jurisdiction to make such other and further Orders with respect to the care, custody, support and maintenance of the said minor children as from time to time may seem meet and proper.''

ii. August 27, 1953, on a motion to change the custody of the children, the Nevada court made an order allowing defendant their physical custody during the summer vacation.

iii. August 3, 1954, defendant filed a petition in the Superior Court of the State of California, in and for the County of Marin, seeking appointment as guardian of the children. At the time this petition was filed the children were residing with him in his San Rafael residence under his lawful custody pursuant to a Nevada custody order.

Upon the filing of this petition, the Superior Court of Marin County issued its temporary restraining order restraining plaintiff from taking the minor children from defendant's custody or from defendant's San Rafael home pending the hearing on the petition. This restraining order was duly served upon plaintiff on August 5, 1954.

iv. In October 1954 the Nevada court again modified the order for custody, taking away from defendant the right to

the summer custody of the children and awarding their full custody to plaintiff, with the right of reasonable visitation in Nevada to defendant.

v. Support payments for September 1954 to June 1955 were not made by defendant. Pursuant to chapter 128 of the Statutes of Nevada, plaintiff thereafter made a motion to reduce the delinquent support payments to a formal judgment. The court ordered service of the notice of motion on defendant by registered mail, return receipt requested. Defendant made no personal appearance, and judgment was entered against him for $1,000, plus $250 attorney's fees and $10 costs.

vi. September 18, 1955, plaintiff filed a complaint in Marin County, California, to establish the Nevada judgment as a judgment of this state.

vii. October 17, 1955, defendant filed an answer in which he admitted submitting himself to the jurisdiction of the Nevada court in all proceedings except the last one and admitted the nonpayment of, and his ability to pay, the support during the 10-month period involved in the judgment.

Defendant set up, among others, the affirmative defense that it would be against public policy to enforce the judgment in California because plaintiff did not come into court with "clean hands." He alleged that she was in contempt of the very court whose aid she was seeking, in that she had violated the temporary custody and restraining order issued in the guardianship proceeding which was filed in Marin County in August 1954 and was still pending; that she had kidnaped the children from his San Rafael home on August 20, 1954, and taken them into Nevada, where they had been concealed in an abandoned mine in the desert; that as a direct result of her wrongful conduct the Nevada court made the child support order and the judgment based thereon which she was endeavoring to enforce in the instant action; and, further, that she had never appeared nor purged herself of contempt in such proceeding and should not be permitted to profit from her own wrongdoing.

viii. October 21, 1955, plaintiff filed a motion to strike the foregoing affirmative defense, which motion was denied by the trial judge.

ix. After trial, the judge found that the allegations set forth above in defendant's affirmative defense were true and denied plaintiff recovery on the Nevada judgment.

*Questions*: First. *Did the trial court err in denying plaintiff's motion to strike defendant's affirmative defense set forth above?*

*No.* It is contended that there was no personal service of the restraining order on plaintiff and no hearing thereon was held within 10 days, as a result of which the restraining order was void, and that the action of the trial court in denying plaintiff's motion to strike defendant's affirmative defense set forth above was therefore error.

However, findings of fact made by the trial court refute these arguments. Since the present appeal is upon the judgment roll and does not contain the evidence before the trial court, it will be conclusively presumed that the evidence sustained the findings. (*Hunt* v. *Plavsa,* 103 Cal.App. 2d 222, 224 [229 P.2d 482] ; *Estate of Larson,* 92 Cal.App. 2d 267, 268 [1] [206 P.2d 852] ; *cf. Reid* v. *Valley Restaurants, Inc.,* 48 Cal.2d 606, 609 [2] [311 P.2d 473].)

Accordingly, in the instant case, the finding of the trial court that "said restraining order was duly served upon" plaintiff on August 5, 1954, is presumed to be supported by competent evidence.

Likewise, there is nothing in the record to show that a hearing was not held within 10 days after the issuance of the order, and the trial court's finding that all the allegations of the answer were true (one of the allegations being that said order was "still pending in the Marin County Superior Court") is presumed to be supported by the evidence.

Second. *Did the trial court err in denying plaintiff's motion for a commission to examine witnesses in Nevada?*

*No.* There is a total absence of any evidence in the record to show that plaintiff complied with sections 2024, 2025 or 2025½ of the Code of Civil Procedure. Therefore, there is no affirmative showing of error upon the part of the trial court.

Third. *Did the trial court err in not hearing defendant's affirmative defense, which constituted a plea in abatement, prior to trying the case?*

*No.* Section 597 of the Code of Civil Procedure provides only that if the answer raises a plea in abatement "the court *may,* upon the motion of either party, proceed to the trial of such special defense . . . before the trial of any other issue in the case. . . ." (Italics added.)

It is clear that a plea in abatement may be heard either before the trial of other issues or along with the trial of

other issues and that if the latter procedure is followed, the trial court may, after the trial, grant the plea in abatement.

██ There is no rule of law to the effect that a defendant waives his plea in abatement by not insisting that it be tried separately and prior to the issues on the merits.

The judgment is affirmed.

Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

Plaintiff brought this action to establish as a judgment in this state, a Nevada judgment for accrued arrearages for child support, attorney's fees and costs. The Nevada judgment was based on the modification order of October, 1954, which continued in effect defendant's previously adjudicated obligation to pay plaintiff $100 per month for child support. It is undisputed that the Nevada court had personal jurisdiction over defendant to enter the October, 1954 order and that its jurisdiction was continuing. Accordingly, it had jurisdiction to enter the judgment for arrearages if adequate notice to defendant was given. (*Lewis* v. *Lewis*, 49 Cal.2d 389, 395-396 [317 P.2d 987], and authorities cited.)

The Nevada court provided that notice should be served on defendant ''by registered mail, return receipt requested,'' and the conclusion of the trial court herein that the Nevada court did not acquire jurisdiction was based on its finding that ''no return receipt bearing defendant's signature has ever been presented.'' The order fixing the kind of notice to be given, however, did not require a return receipt signed by defendant personally and the return receipt in the record, signed ''Walter J. Kubon by Charlotte G. Kubon,'' supports the recital of the Nevada judgment that ''evidence [of service had] . . . been introduced'' and the Nevada court's assumption of jurisdiction. Service by registered mail was reasonably calculated to give defendant notice of the proceedings (see *Griffin* v. *Griffin*, 327 U.S. 220, 229 [66 S.Ct. 556, 90 L.Ed. 635]), and there is no finding that defendant had no actual notice of them. (See *Lewis* v. *Lewis*, 49 Cal.2d 389 396 [317 P.2d 987].)

Nor can the Nevada judgment be attacked on the ground that plaintiff may have been in contempt of the custody and support order on which it was based. Whether or not plaintiff's denial of defendant's visitation right was a defense to

her claim for the support payments was for the Nevada court to determine when plaintiff sought judgment for the arrearages (see *Closset* v. *Closset,* 71 Nev. 80 [280 P.2d 290, 291]; *In re Elmer's Guardianship,* 125 N.J.Eq. 148 [4 A.2d 387, 388]; *Meissner* v. *Meissner,* 323 Ill.App. 299 [55 N.E.2d 312]; *Anderson* v. *Anderson,* 207 Minn. 338 [291 N.W. 508, 509]; 88 A.L.R. 199; 105 A.L.R. 901), and that question is now foreclosed by that judgment.

The crucial question therefore is whether plaintiff's removal of the children from defendant's custody in violation of the temporary restraining order issued by the California court prior to the October, 1954 Nevada custody and support order is a defense to plaintiff's action on the valid Nevada judgment for arrearages due pursuant to the latter order. It is my opinion that recognition of such defense violates the full faith and credit clause of the United States Constitution.

The United States Supreme Court has repeatedly held that a state may not vindicate its own policy by refusing enforcement of a sister state judgment for the payment of money on the ground that its recognition would violate the policy of the state where enforcement is sought. (*Morris* v. *Jones,* 329 U.S. 545, 553 [67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656]; *Titus* v. *Wallick,* 306 U.S. 282, 291 [59 S.Ct. 557, 83 L.Ed. 653]; *Roche* v. *McDonald,* 275 U.S. 449, 451-452 [48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141]; *Fauntleroy* v. *Lum,* 210 U.S. 230, 236 [28 S.Ct. 641, 52 L.Ed. 1039].) It has pointed out that in the case of valid final judgments for the payment of money, the exceptions to the full faith and credit clause are rare or nonexistent (*Morris* v. *Jones,* 329 U.S. 545, 553 [67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656]; *Magnolia Petroleum Co.* v. *Hunt,* 320 U.S. 430, 438 [64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413]), and it has held that a "state which may not constitutionally refuse to open its courts to a suit on a judgment of another state because of the nature of the cause of action merged in the judgment [citation], obviously cannot, by the adoption of a particular rule of liability or of procedure, exclude from its courts a suit on the judgment." (*Titus* v. *Wallick,* 306 U.S. 282, 292 [59 S.Ct. 557, 83 L.Ed. 653].) Accordingly, just as we cannot directly refuse full faith and credit to the Nevada judgment because the Nevada court failed to give effect to our policy of not assisting a contemptuous litigant, we cannot invoke that policy as a rule of procedure to sustain a plea in abatement to a suit on that judgment.

At the time the Nevada order of October, 1954 and the judgment based thereon were entered, plaintiff was already in contempt of the California court. That fact was for the Nevada court to consider in entering its order and subsequent judgment. Moreover, even had the California order such dignity as to compel its recognition in Nevada under the full faith and credit clause, a final judgment entered in disregard of it could not now be denied enforcement here. (*Treinies* v. *Sunshine Min. Co.*, 308 U.S. 66, 78 [60 S.Ct. 44, 84 L.Ed. 85]; *Lewis* v. *Lewis*, 49 Cal.2d 389, 393 [317 P.2d 987].) If in the face of the Nevada judgment the California court could not vindicate respect for its own judicial processes that had been erroneously denied full faith and credit, *a fortiori*, it cannot do so when those processes are not entitled to full faith and credit.* Any doubt is set at rest by *Morris* v. *Jones*, 329 U.S. 545 [67 S.Ct. 451, 91 L.Ed. 488, 168 A.L.R. 656]. In that case a Missouri judgment was obtained in direct violation of an Illinois injunction against prosecuting the action. The court held that the time to determine the effect of the Illinois injunction was in the Missouri action and that although it had been given no effect therein, the defendant was precluded by the full faith and credit clause from attacking the final Missouri judgment when plaintiff sought to establish it in Illinois.

Even if we were not constitutionally compelled to reject defendant's plea in abatement based on plaintiff's contempt of the temporary restraining order, we should reject it on its own merits. After the temporary restraining order was issued, the parties fully litigated the questions of custody and child support in Nevada. Nevada was the state primarily concerned with the children's welfare. Their custody had theretofore been awarded pursuant to a Nevada decree, they had lived in Nevada during the previous school year, and they had returned to Nevada and presumably reentered school there. It must be presumed that the Nevada court concluded that their best interests dictated that they should remain with their mother there and that defendant should continue to contribute to their support. The Nevada court

---

*Since it was not a final judgment, the temporary restraining order was not entitled to full faith and credit under existing law (see discussion in *Worthley* v. *Worthley*, 44 Cal.2d 465, 468-469 [283 P.2d 19]) even if it is assumed that if final it would be entitled to such protection. (See *Equitable Life Assur. Soc.* v. *Gex' Estate*, 184 Miss. 577 [186 So. 659, 664]; *Frye* v. *Chicago, R. I. & P. Ry. Co.*, 157 Minn. 52 [195 N.W. 629, 632].)

did not err in placing the welfare of the children above the desirability of compelling plaintiff to respect the order of the California court. (See *Lerner* v. *Superior Court*, 38 Cal. 2d 676, 682 [242 P.2d 321], and cases cited.) Surely after this litigation and the Nevada court's determination that the children should stay where they were, it was not incumbent on plaintiff to set that order at naught, remove the children from school, and return them to California solely to vindicate the dignity of our court and purge herself of contempt.

None of the cases involving the rule that relief should be denied to a contemptous litigant involved facts such as these. Moreover, many of them indicate that the true basis for the rule is to compel obedience, not to work an automatic forfeiture of whatever rights may be involved. Thus, in both *Krog* v. *Krog*, 32 Cal.2d 812 [198 P.2d 510], and *Borenstein* v. *Borenstein*, 11 Cal.2d 301 [79 P.2d 388], it was held that a stay of proceedings until the appellant complied with the court's order, not a dismissal of his appeal, was the proper remedy for his contempt. (See also *In re Bauman*, 82 Cal. App.2d 359, 364 [186 P.2d 154].) When as in this case, plaintiff can purge herself of contempt only by uprooting the children in prejudice of their best interests as determined by the Nevada court after a full adversary hearing, belated compliance cannot be justified. Nor is the forfeiture of her rights and those of the children fit punishment for her past wrong. (See *Allen* v. *Allen*, 138 Cal.App.2d 706, 708-709 [292 P.2d 581].)

I would reverse the judgment.

Gibson, C. J., and Carter, J., concurred.