Filed 5/15/26  Valencia v. Barrios CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE MANUEL VALENCIA, | H053148<br>(Santa Clara County<br>Super. Ct. No. 2012-1-CP-020002) |
| Petitioner and Appellant, | |
| v. | |
| KORINA BARRIOS, | |
| Defendant and Respondent. | |
| SANTA CLARA COUNTY<br>DEPARTMENT OF CHILD SUPPORT<br>SERVICES, | |
| Intervenor and Respondent. | |

In the trial court, Jose Valencia filed a "petition for bill of review" (capitalization & boldface omitted) seeking, among other things, to terminate the child support awarded in this action and reimbursement for garnished wages.  The trial court denied the petition and a subsequent petition for rehearing.  Valencia appeals from these denials.

However, Valencia has not included in the appellate record any documents concerning the actions earlier in the case that he is seeking to overturn.  As a consequence, we are not in a position to determine that there was any error in the trial court.  In addition, to the extent that Valencia's arguments are discernible, they are based

upon misconceptions of the applicable legal requirements and principles. Accordingly, as explained below, we conclude that Valencia has failed to demonstrate any error and therefore affirm the challenged orders.

## I. BACKGROUND

### A. The DCSS Child Support Suit[1]

In March 2011, the Santa Clara County Department of Child Support Services (DCSS) sued Valencia (and named Korina Barrios as the other parent) to establish parental obligations for a minor child, C.B.V., born in 2009. In February 2012, the trial court entered judgment, finding Valencia and Barrios to be C.B.V.'s parents and ordering Valencia to pay monthly child support of $323 and unpaid previous support of $3,222.

### B. Valencia's Custody Petition

In April 2012, Valencia filed a petition for custody and support as well as a petition to establish a parental relationship with C.B.V. The case was consolidated with the DCSS's earlier suit, and in May 2012 a judgment was entered. Over the following decade the trial court entered orders relating to custody, visitation, and support. Although neither the May 2012 judgment nor, indeed, any documents before 2024 are included in the clerk's transcript, on our own motion we take notice of the February 2012 judgment, as well as the summons and complaint filed by DCSS in the 2011 case.

### C. The Petition for Bill of Review

In September 2024, Valencia filed a "Petition For Bill Of Review" (boldface omitted) and an accompanying affidavit. Valencia asserted that he did not receive a valid summons: Valencia referenced a summons described as Exhibit A but the record does not

---

[1] The facts regarding 2011 child support case are drawn from pleadings that were not included in the clerk's transcript but were attached to Valencia's Civil Case Information Statement and his response to an order to show cause. On our own motion, we take judicial notice of the summons, complaint, and judgment issued in the 2011 case brought by the Santa Clara County Department of Child Support Services.

2

contain the exhibit. Valencia similarly asserted that an "Administrative order" was invalid, but he does not otherwise identify the order, and while he referenced the order as Exhibit B, the order is not contained in the record either. Valencia also claimed violations of the separation of powers doctrine and due process. As noted above, in the petition, Valencia requested that the trial court terminate all child support and reimburse him for previously garnished wages.

In December 2024, Valencia filed a "Notice Of Special Visitation" (boldface omitted), which appears to have been intended to indicate that he was making a special appearance to challenge the trial court's jurisdiction over him. The following month, in January 2025, the trial court held a hearing on Valencia's petition for a bill of review, and on February 6, 2025, it issued an order denying the petition.

## D. The Petition for Rehearing

On January 29, 2025, after the hearing on his petition for bill of review but before issuance of the order denying the petition, Valencia filed a "Petition for Rehearing."[2] Valencia asserted the purpose of this new petition was "to exhaust administrative remedies" and allow the "regulatory agency an opportunity to cure the errors before a judicial review."

The petition for rehearing asserted seven errors: (1) the trial court issued a summons lacking a judicial signature and seal, and consequently respondent did not receive valid service of process; (2) the trial court issued an administrative order lacking a judicial signature and seal as required by rule 12(b)(4) of the Federal Rules of Civil Procedure; (3) the trial court's power to make, enforce, and adjudicate child support orders violates the separation of powers doctrine; (4) the trial court lacked subject matter

---

[2] The docket shows that an amended Petition for Rehearing was filed on February 19, 2025; however, the amended petition is not included in the record on appeal.

jurisdiction; (5) suits by public agencies or entities for child support create a conflict of interest; (6) the trial court's classification of Valencia as a non-custodial parent violated Valencia's "Natural Parental Autonomy Rights" (boldface omitted); and (7) Valencia was denied due process because the consequences of establishing paternity were not fully disclosed.

In March 2025, the trial court held a hearing on the petition for rehearing. On the day of the hearing the court issued a minute order denying the petition, and on April 15, 2025, an "Order After Hearing" was filed.

Valencia filed a notice of appeal on April 3, 2025, purporting to appeal from orders entered on January 22 and March 24, 2025. After this court issued an order to show cause, Valencia filed a letter brief attaching the February 6, 2025 order denying the petition for bill of review and the April 15, 2025 order denying the petition for rehearing, and we deemed Valencia's notice of appeal filed on April 15, 2025. (Cal. Rules of Court, rule 8.104(d); see *In re Joshua S.* (2007) 41 Cal.4th 261, 272 [" 'notices of appeal are to be liberally construed so as to protect the right of appeal if it reasonably clear what [the] appellant was trying to appeal from' "].) Additionally, we treat his petition for bill of review as a motion to set aside a void judgment (see Code Civ. Proc., § 473, subd. (d)) and therefore deem the orders denying that motion and the petition for rehearing to be appealable post-judgment orders. (Code Civ. Proc., § 904.1, subd. (a)(2); see *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 1004, 1008-1009.)

## II. DISCUSSION

Because respondents have not filed briefs, we resolve this appeal based solely on Valencia's opening brief and the record that he has provided, as augmented by the court. (Cal. Rules of Court, rule 8.220(a)(2).) Even as augmented, this record is not sufficient to overcome the presumption of correctness that we must apply to the trial court's ruling and demonstrate any reversible error. In addition, as explained below, to the extent that

4

Valencia's arguments are discernible, they are largely based on misconceptions concerning the relevant procedures and law.

## A. The Presumption of Correctness

We begin with the presumption of correctness. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "].)

Appellants have the burden of overcoming the presumption of correctness. To do so, they must demonstrate that the trial court committed reversible error, which means appellants must designate " 'an adequate record.' " (*Jameson*, *supra*, 5 Cal.5th 594 at p. 609; see also *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*).) Without an adequate record, error cannot be demonstrated, and the presumption of correctness requires that issues be resolved against appellants. (*Ibid*.) Appellants also must show where in the record any error occurred.

In addition to an adequate record, appellants "must present meaningful legal analysis supported by citations to authority and citations to the fact in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*); see also *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 (*WFG*); *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 (*United Grand*).) Appellate courts are " 'not required to search the record . . . seeking error' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*)), and they are "not bound to develop appellants' arguments for them" (*In re Marriage of Falcone & Fyke*

5

(2008) 164 Cal.App.4th 814, 830).  Consequently, " ' "[a]ny statement in a brief concerning matters in the appellate record . . . must be supported by a citation to the record." ' " (*Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 595; see also *WFG*, at p. 894 ["[W]e may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record."].)  In addition, " ' "[c]ontentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned." ' " (*In re Phoenix H.* (2009) 47 Cal.4th 835, 845 (*Phoenix*); see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) [A "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and a reviewing court will "treat the issue as abandoned."].)  In short, "conclusory claims of error will fail." (*S.C.*, at p 408.)

These rules apply equally to a party such as Valencia representing himself on appeal.  (*Nwosu*, *supra*, 122 Cal.App.4th at pp. 1246-1247.)  A self-represented party is " 'treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.  [Citation.]' " (*Id*. at p. 1247; *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.)

## B.  The Record

Valencia cannot overcome the presumption of correctness and demonstrate reversible error because he has not provided an adequate record of the proceedings being reviewed.  In his notice designating the record, Valencia designated only four documents: the petition for bill of review, the petition for rehearing, the notice of special visitation, and the affidavit in support of the petition for bill of review.  As a consequence, the record on appeal does not include the judgment imposing child support that Valencia seeks to terminate or the wage garnishment order for which he seeks reimbursement.  In addition, the record does not contain either the summons or the "Administrative Order"

6

that Valencia contends were invalid. Nor is there any evidence of the proceedings that Valencia contends violate the separation of powers and create a conflict interest, the basis for the trial court's exercise of personal and subject matter jurisdiction, the restrictions allegedly imposed on Valencia's rights, or the failure to make disclosures.

On this record, we cannot review whether the trial court acted appropriately in denying Valencia's petitions. If the appellate record "does not contain the evidence before the trial court," the reviewing court must "conclusively presume[] that the evidence sustained the [trial court's] findings." (*Kubon v. Kubon* (1958) 51 Cal.2d 229, 232; see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [affirming judgment where inadequate record contained "only selected excerpts from the clerk's transcript" and no "reporter's transcript or the exhibits presented at trial"]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters . . . .* The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence."].)

## C. Valencia's Legal Arguments

Even if we had a record sufficient to assess Valencia's arguments, we still would reject those arguments because they are based on misconceptions or inadequately developed.

### 1. *The Summons*

Valencia argues that the summons issued in this case was defective because it lacked a judicial signature and seal. Because Valencia has not identified the summons in question or included it in the record, it is impossible to determine whether in fact the summons lacked such a signature or seal, and for that reason alone we must resolve this

issue against Valencia.  (See *Jameson*, *supra*, 5 Cal.5th 594 at pp. 608-609; *Osgood*, *supra*, 127 Cal.App.4th at p. 435; *WFG*, *supra*, 51 Cal.App.5th at p. 894; *United Grand*, *supra*, 36 Cal.App.5th at p. 156.)  Moreover, even if we assume that Valencia is referring to the summons issued in the 2011 suit brought by DCSS, his argument fails because it is based on a misconception.

Citing federal statutes and cases from the federal courts and other states, Valencia asserts that a summons must have a "judicial signature and a seal."  However, the summons in the 2011 DCSS suit contained a seal.  Moreover, under California law, a judicial signature is not required.  Instead, the Code of Civil Procedure expressly states that a summons should be by signed by the clerk:  "Except as otherwise required by statute, a summons shall be directed to the defendant, *signed by the clerk* and issued under the seal of the court in which the action is pending . . . ."  (Code Civ. Proc., § 412.20, subd. (a), italics added).)  We also note that, contrary to Valencia's suggestion, the requirement is the same under federal law.  (See 28 U.S.C. § 1691 ["All writs and process issuing from a court of the United States shall be under the seal of the court and *signed by the clerk* thereof," italics added].)

## 2.  *Sufficiency of the Order*

Valencia argues that the trial court erred in issuing an "Administrative order" without a judicial signature and seal.  However, Valencia does not identify this order, and as the proceedings in the trial court in this matter were not administrative in nature, it is impossible even to guess what order Valencia is referencing.  In any event, in California courts, orders do not require a judicial signature and seal.  To the contrary, the Code of Civil Procedure states that orders need only be "made or entered in writing."  (Code Civ. Proc., § 1003 ["Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order."].)  Accordingly, it is well-settled that even minute orders, though unsigned and lacking a seal, are valid.  (See *Southwestern*

*Law School v. Benson* (2019) 42 Cal.App.5th Supp. 1, 9; *In re Marcus* (2006) 138 Cal.App.4th 1009, 1015-1016; *People v. Gordon* (1951) 105 Cal.App.2d 711, 716.)

### 3. *Separation of Powers*

Valencia contends that some child support orders violate the separation of powers doctrine. Because Valencia does not identify the orders that he is challenging, it is not possible to determine if they violate the doctrine, and Valencia's separation-of-powers argument fails for that reason alone.

In addition, in arguing that child support orders combine the powers of all three branches of government, Valencia is mistaken. Valencia contends that creating support orders is a legislative function, enforcing the orders is an executive function, and only adjudicating disputes over orders is a judicial function. In fact, enactment of statutes is a legislative function (see, e.g., See *Carmel Valley Fire Protection Dist. v. State* (2001) 25 Cal.4th 287, 299-300), and applying statutes to the particular facts of a case by issuing child custody and support orders is a judicial function. (*Vergara v. Ouse* (2025) 116 Cal.App.5th 1238, 1246; Fam. Code, § 3022.) In addition, enforcement of child custody orders combines both executive and judicial powers. When a court determines that an order has been violated and provides a remedy for the violation, it is performing a judicial function. Executive powers are exercised only in executing the remedies imposed by the court or by deciding to prosecute persistent violations of the orders.

### 4. *Subject Matter Jurisdiction*

Valencia asserts that the trial court lacked subject matter jurisdiction "due to the lack of 'Standing' on the part of the Petitioner(s)." (Boldface & some capitalization omitted.) As Valencia himself was the petitioner in this action, and thus obviously believed himself aggrieved, this argument is puzzling. In addition, to the extent that he is challenging the standing of DCSS in the 2011 suit consolidated with Valencia's suit, in which DCSS sued to establish parental obligations for C.B.V., Valencia is incorrect.

Under California law, local support agencies such as DCSS "represent the public interest in establishing, modifying, and enforcing support obligations" (Fam. Code, § 17406, subd. (a)), and such agencies "have the responsibility for promptly and effectively establishing, modifying, and enforcing child support obligations" (*id*., § 17400, subd. (a)(1)). Thus, DCSS plainly had standing to sue to establish and enforce Valencia's parental obligations. Moreover, California courts have subject matter jurisdiction over child support matters. (See, e.g., *In re Marriage of Haugh* (2014) 225 Cal.App.4th 963, 977.)

In the subject matter jurisdiction section of his argument, Valencia also asserts that "Petitioner(s)" failed to state a valid claim and asserted a claim "unsupported by affidavits or any factual evidence." However, Valencia once again fails to identify who "Petitioner(s)" is or are. In addition, he does not identify the claim brought, much less explain why it is either invalid or unsupported by evidence. As a consequence, the asserted invalidity of the claim of "Petitioner(s)" is entirely conclusory and therefore inadequate. (*S.C.*, *supra*, 138 Cal.App.4th at p. 408 ["conclusory claims of error will fail"]; see also *Phoenix*, *supra*, 47 Cal.4th at p. 845 ["Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned."]; *Benach*, *supra*, 149 CalApp.4th at p. 852 ["conclusory presentation, without pertinent argument or attempt to apply the law to the circumstances of this case, is inadequate"].)

### 5. *Bias and Conflict of Interest*

Valencia also contends that "the state" impermissibly acted as both a party and the tribunal in this case. In fact, the State of California was not a party to this case. The original action was brought by the DCSS, a county agency, not by the state, and it is well established that judges and other adjudicators are generally afforded a presumption of impartiality. (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025.) In

10

addition, the case was heard by the Superior Court for the County of Santa Clara, and while the court is part of California's judiciary system, Valencia does not—and, as far as we are aware, cannot—offer any authority suggesting that the state's judiciary system should be equated with the state as a whole and disqualified from considering any cases brought on behalf of the People of the State of California—including presumably all criminal cases. As a consequence, this argument is also conclusory and inadequate. (*Phoenix*, *supra*, 47 Cal.4th at p. 845; *Benach*, *supra*, 149 Cal.App.4th at p. 852; *S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

### 6. *Parental Autonomy Rights*

Valencia contends the trial court's decision to classify him as a "Non-Custodial Parent" infringed upon his "natural Parental Autonomy Rights" and violated due process. (Boldface & underlining omitted.) Valencia appears to be challenging the determination in the trial court's 2012 judgment that Barrios rather than Valencia has custody of C.B.V. However, Valencia did not challenge that determination in his petition for bill of review, which sought only to terminate child support and reimbursement of garnished wages. Moreover, any challenge to the determination is clearly untimely. (Cal. Rules of Court, rule 8.104(a)(1).)

While Valencia also asserts that he was denied due process, he fails to explain how the procedures employed by the trial court were unfair or prejudicial. Nor does he offer any meaningful argument or analysis concerning due process. As a consequence, his due process argument is conclusory and inadequate. (*Phoenix*, *supra*, 47 Cal.4th at p. 845; *Benach*, *supra*, 149 Cal.App.4th at p. 852; *S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

### 7. *Disclosures*

Valencia asserts a "[f]ailure to give full disclosure of all material information and legal consequences" of acknowledging paternity. However, Valencia does not identify

when this failure occurred, much less point to any evidence in the record establishing the asserted failure. Nor does he explain how the asserted failure impacted any of the rulings that he now challenges. Valencia merely cites a federal regulation requiring hospitals, state birth record agencies, and others participating a "voluntary paternity establishment program"—but not courts—to disclose certain information. (See 45 C.F.R. § 303.5(a)(2).)

### 8. *Personal Jurisdiction*

Finally, Valencia asserts that personal jurisdiction was not proven. In support of this assertion, Valencia highlights two "pivotal" affidavits: his "Affidavit In Support Of Notice Of Special Visitation" and an "Affidavit Rebutting All Minimum Contacts and Presumptions." (Boldface omitted.) While there is a "Notice Of Special Visitation" (boldface omitted) resembling the first affidavit in the clerk's transcript, there is nothing concerning the second affidavit. In addition, while the Notice of Special Visitation cites some out-of-state and federal cases concerning special appearances, neither the notice nor Valencia's brief analyzes any of the factors that authorize a court to exercise personal jurisdiction. (See Fam. Code, § 5700.201, subd. (a) [authorizing court to "exercise personal jurisdiction over a nonresident individual" if, among other things, he or she was served within the state, entered a general appearance, filed a responsive document, resided in the state and provided prenatal expenses or support, engaged in sexual intercourse in the state and the child may have been conceived by that act, filed a declaration or paternity, or if the child resides in the state as a result of the acts of the individual]; § 5700.205, subd. (a) [continuing exclusive jurisdiction based on residence of obligor, obligee, or child].) Nor does Valencia explain how the trial court could lack personal jurisdiction over him in a case that he chose to bring in California. (See, e.g., *In re Marriage of Fitzgerald & King* (1995) 39 Cal.App.4th 1419, 1425 ["Due process

12

permits the exercise of personal jurisdiction . . . where the defendant consents to jurisdiction"].)

## III. DISPOSITION

The February 6, 2025 and April 15, 2025 orders are affirmed.

_____

BROMBERG, J.


WE CONCUR:




_____

DANNER, ACTING P. J.




_____

CHUNG, J.*




*Harmon v. The Romero Institute et al.*
H053222

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.