[Civ. No. 6295.   Fourth Dist.   Oct. 31, 1960.]

HERBERT B. PAAP et al., Respondents, v. E. R. VON HELMHOLT et al., Appellants.

Solomon & Coffin and John W. Solomon for Appellants.

H. H. Slate for Respondents.

SHEPARD, J.—This is an action for ejectment, for damages, and to quiet title to real and personal property. Judgment was had for plaintiffs, against defendants for possession, quieting plaintiffs' title against defendants, and for the recovery by plaintiffs of defendants of the sum of $1,586.06 for unlawful holding. Defendants appeal from the money judgment only.

The record before us, in general substance, shows: Plaintiffs' first cause of action alleged, *inter alia,* the execution on February 3, 1954, of a written contract of sale from plaintiffs, as vendors, to defendants, as vendees, for the sale to said vendees of certain residential property and furnishings for the agreed sales price of $31,000; delivery of possession to defendants; failure of defendants to make the payments therein provided; demand by plaintiffs after default by defendants, for restoration to plaintiffs of possession; and refusal of defendants to surrender possession. As a second cause of action, plaintiffs alleged, in addition to the foregoing, notice of default and demand for possession under date of October 22, 1957, a reasonable rental value of the premises of $500 per month, damages in that amount from February 3, 1954, and total payments by defendants of $9,800. For a third cause of action, plaintiffs alleged ownership in themselves and adverse claims by defendants without right. The prayer is for restoration, money judgment for damages, and quiet title.

Defendants, in their answer, denied default, denied the amounts claimed due, alleged improvements worth $5,000, and a total present value of the property of $35,000. They admitted receipt of the letter dated October 22, 1957, denied its legal effect, and offered to surrender the property conditioned upon plaintiffs accepting such surrender as a rescission and as full settlement of all claims. They denied the alleged

reasonable monthly rental value and alleged that no rental was due. They denied the damages claimed by plaintiffs.

The minutes of the court under date of April 23, 1958 (date of trial), show that neither of the parties was in court, but both were represented by counsel. Apparently no witnesses were sworn. Apparently a formal stipulation of facts was to be received by the court for its information in the decision of the cause. Then follows this statement: "A group of documents were introduced and ordered filed and marked plaintiff and defendant's exhibit 1." The statement of agreed facts is included in the clerk's transcript but the documents mentioned were not included and were not mentioned in appellants' notice to the clerk to prepare a transcript on appeal. There is no reporter's transcript, and none was ordered. It is thus apparent that evidence was received by the court which is not in the record before us.

The court found that plaintiffs are the owners of the described property, that the contract of sale described in plaintiffs' complaint was entered into February 3, 1954; that defendants, on the same day, entered into possession and still retained possession, that defendants failed to make payments of $2,500 due October 15, 1954, $2,500 due February 15, 1955, and all payments after May 15, 1956; that defendants have paid a total sum of $9,800, being 28 monthly payments of $350, and did expend $1,994.65 for improvements on said property; plaintiffs have paid $2,359.94 in taxes and assessments on said property during the period in controversy; that defendants retained possession until July 3, 1958, then surrendered possession to plaintiffs, that the reasonable rental value for the entire period is $275 per month, or a total of $14,575; that the present market value of the property is $32,375; that defendants on December 17, 1957, offered to surrender possession on condition that plaintiffs accept such surrender as termination and full settlement; that plaintiffs on October 22, 1957, served notice of default and demand for possession; and that all possession of defendants prior to October 22, 1957, was as purchasers under the contract from plaintiffs. In its conclusions of law and judgment, the court charged defendants with the reasonable rental value of $275 per month for 53 months of possession, and credited defendants with the total amount paid ($9,800), the improvements made ($1,994.65), and the amount of $1,192.29, the amount which plaintiffs would otherwise be unjustly enriched, or a total credit to defendants of $12,986.94. Just how the court

arrived at the figure of $1,192.29 is not clearly shown by the record. It would seem, however, that this would be the approximate difference between the total amount of $31,182.71 found chargeable against defendant, and the market value of $32,375. Defendants do not challenge the particular arithmetic involved in this item, however, and we will therefore not give it further consideration. On these findings the court gave judgment as hereinbefore described.

### REMEDIES OF QUIET TITLE AND EJECTMENT WITH DAMAGES FOR UNLAWFUL HOLDING ARE SEPARATE

Defendants contend that under the general rule relating to termination of contracts of sale of real property, plaintiffs are required to exercise one of two options: first, to affirm the contract and sue for the balance of the purchase price, or, second, to terminate the contract, retain the money paid and repossess the property. In support of this contention, they cite *Security-First Nat. Bank* v. *Hauer,* 47 Cal.App.2d 302 [117 P.2d 952]; *Tuso v. Green,* 194 Cal. 574 [229 P. 327]; *Bernardo* v. *Soderman,* 19 Cal.App. 161 [124 P. 866]; and *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199].

The rule contended for by defendants, insofar as it applies in an action brought *solely* for the purpose of determining rights *under the contract* was, prior to 1935, correct. The Security Bank case primarily involved an attempt by the Bank to recover certain crop proceeds from crops raised by Hauer while Hauer was in possession under the contract. The appeal was from an order setting aside a judgment in favor of the Bank due to alleged fraudulent concealment from the trial court of the actual date of forfeiture. It does not involve the problem with which we are here confronted. The Tuso case involved an alleged rescission of an escrow contract of sale. Damages for holding over after termination of contract were not involved. The Bernardo case involved an action to recover purchase money paid after mutual consent rescission and surrender of possession. It did not involve damages for holding over after termination of contract by vendees' default. The Glock case, again, was an attempt by vendee to recover purchase money paid on a contract of sale. None of these cases discuss the question of what shall be done after the contract is terminated and the vendee then continues to hold possession unlawfully. All of them pertain to rights under the contract itself.

While an action to quiet title, an action for ejectment, and an action for damages for unlawful holding were originally separate actions, they have in recent times been joined together in one action. This does not, however, obviate their separate consideration for purposes of analyzing rights, duties and results. An action in ejectment in the type of proceeding here involved, is not an action on the contract. It is, in reality, exactly the contrary, for it is based on the *non-existence* of the contract. ██ As was said in *California Delta Farms, Inc.* v. *Chinese American Farms, Inc.*, 204 Cal. 524, 526 [2] [269 P. 443]:

"A vendee in default under an executory contract of purchase, who continues in possession after notice of cancellation, is an adverse claimant and all privity between him and the vendor ceases upon such notice."

In *Mayer* v. *West*, 96 Cal.App. 31, 41 [273 P. 849], the court quotes from and analyses previous Supreme Court decisions as follows:

"In *Whittier* v. *Stege*, 61 Cal. 238, the court declares: 'When, therefore, the defendants, after they had obtained possession lawfully, substituted repudiation of the contract and refused to comply with its terms . . . they divested themselves by their wrongful act of the equitable estate which they acquired under the contract, and became trespassers or tenants at will, against whom their repudiated vendors could maintain ejectment.' 'In an action for the recovery of property, where the plaintiff shows a right to recover at the time the action was commenced . . . the plaintiff may recover damages for withholding the property' (Code Civ. Proc., § 740). Rents and profits may be recovered by one entitled to possession when claimed in an action in ejectment, being limited to such as accrued subsequent to the ouster alleged, or, in other words, the occupation of the one holding possession against the owner. (Citations.) In *Seivers* v. *Brown*, 34 Ore. 459 [45 L.R.A. 644, 56 P. 173], the court uses this language: 'It has been held that a purchaser in possession of real property under the vendor's license cannot be evicted, so long as he offers to perform the conditions of his agreement (*Whittier* v. *Stege*, 61 Cal. 238); but, if he refuses to comply therewith the vendor may treat him as a tenant at will (citation); and he thereby becomes liable to the vendor for the reasonable value of the use of the premises for the time during which he continues in possession after he abandons the agreement (citing cases). The application of this rule would

render plaintiff liable to defendant for the reasonable rent of the land from the time the relation of vendor and purchaser was abrogated by the former's refusal to keep his agreement.' "

A similar problem in separate damages for unlawful holding is discussed in *McKelvey* v. *Rodriquez*, 57 Cal.App.2d 214, 225 [10a] [134 P.2d 870].

It is, of course, recognized that a defendant vendee is not liable either for rent or for the reasonable value of the use and occupation of the premises so long as he holds under the executory agreement to purchase. (*Belger* v. *Sanchez*, 137 Cal. 614, 618 [70 P. 738].) But, "The willful refusal of a vendee to perform his agreement amounts to an abandonment of the contract by him; and a repudiated contract is no protection to a vendee in possession against the legal title." (*Andrews* v. *Karl*, 42 Cal.App. 513, 519 [4] [183 P. 838].)

The judgment in ejectment does not purport to transfer to the successful party the title. While an action in ejectment may involve title because the right of possession may well depend upon the title of plaintiff and lack of title in defendant, nevertheless it is not primarily designed as a vehicle of transferring title. Rather, it is a means of awarding possession because the prevailing party had title and right of possession at the commencement of the action, and defendant had no such title nor right of possession. (*Zaccaria* v. *Bank of America*, 164 Cal.App.2d 715, 718-719 [1, 2, 3, 4] [331 P.2d 198].) It is the proper remedy of the true owner for the recovery of possession and the value of the use and occupation of the land during unlawful holding. (*Grossman* v. *Yip Wing*, 62 Cal.App. 121, 130 [216 P. 634]; *Bank of America* v. *O'Shields*, 128 Cal.App.2d 212, 217 [11] [275 P.2d 153].) As was said in *Abbott* v. *Kellogg*, 18 Cal.App. 429, 432 [123 P. 227]:

"While the entry of defendant was lawful and not for any definite term, or with any liability for rent (citation), nevertheless, the value of the use and occupation of the premises, for the period of possession after forfeiture, was recoverable as damages, and the amount thereof found by the court under the issues presented will be assumed to be correct, nothing to the contrary appearing."

It must not be confused with the rights of the vendor and the vendee during the life of or dependent upon the existence of the contract.

### Code of Civil Procedure, Section 580b, Prevents a Deficiency in Favor of Vendor on the Contract Price

Next, defendants contend that section 580b of the Code of Civil Procedure would prevent the recovery of a deficiency. The first paragraph of that section, which is the only portion here involved, reads as follows:

"No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property."

It is undoubtedly true that under that section no deficiency judgment is permitted insofar as a sale price of the property relates itself to the contract price. (*Winklemen* v. *Sides,* 31 Cal.App.2d 387 [88 P.2d 147]; *Freedland* v. *Greco,* 45 Cal.2d 462 [289 P.2d 463].) However, we are not here concerned with the problem of a deficiency accruing by reason of a sale of the property. Neither are we concerned with a deficiency arising from an attempt to charge defendant with rent during the life of the contract. The trial court in this proceeding used, and we think properly so, the equitable procedure of balancing equities to prevent unjust enrichment of the vendor on the contract account. This was in accordance with the procedures resultant from the prohibition contained in Civil Code, sections 3369 and 3375, which is elucidated in *White* v. *Jones,* 136 Cal.App.2d 567 [288 P.2d 913]; *Baffa* v. *Johnson,* 35 Cal.2d 36 [216 P.2d 13]; *Petersen* v. *Ridenour,* 135 Cal. App.2d 720 [287 P.2d 848]; and *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367].

From an examination of the figures, it appears that defendants' contract was terminated on October 22, 1957, leaving them in a position of holding unlawfully for a period of 8 months and 11 days. Except for the equitable balancing of accounts procedure followed by the trial court, defendants would have been charged for this holding over approximately $2,300. It is clear, therefore, that from the balancing of equities defendants have been given credit of more than $700, which was deducted from a fair rental value for the period of unlawful holding.

Defendants appear to believe that their right of possession under the contract could not be declared ended except by court decree in the fashion that is true under mortgage foreclosure. Under the authorities heretofore noted, we cannot give accord to that contention. Under the findings of the

court, defendants' right of possession ended October 22, 1957. We cannot read into the section words which are not there. Nothing in the facts of this case give any support to the contention of attempted evasion of the section. In fact, through the application of Civil Code, section 3369, and the balancing of equities procedure followed by the court, they were given a credit that would otherwise not have been available.

### Conditional Offer Not Acceptable

Defendants next complain that because they offered to rescind the contract on December 17, 1957, on condition that on acceptance by plaintiffs there would be a complete termination and waiver of all claims, no rental should thereafter be charged. With this we cannot agree. The offer presented conditions that plaintiffs were not compelled to accept, and therefore gave defendants no additional rights.

### Findings Are Not in Conflict

Defendants next contend that finding 13 and finding 9 are in conflict. They read as follows:

"XIII That plaintiffs on October 22, 1957, served notice of default on defendants and demanded that defendants surrender possession of the premises. That all prior possession of defendants was as purchasers under the contract from plaintiffs."

"IX The court further finds that the present market value of the said property and furnishings is the sum of $32,375.00, and that the reasonable rental value for the said property and furnishings is the sum of $275.00 per month; that the defendants have retained possession of the said property up to on or about July 3, 1958, at which time they surrendered possession to the plaintiffs; that the reasonable rental value for the said property for said period of fifty-three months is the sum of $14,575.00."

We see no conflict in these findings. The estimate of total rental value for 53 months was not for the purpose of charging defendants with rent for the period of time they held under the contract. It was purely a method of balancing equities through which a credit was given to defendants of the sum of more than $700 against the amount they owed for unlawful holding.

As hereinbefore noted, all of the evidence received has not been included in the clerk's transcript, and no reporter's transcript is presented. We must therefore presume that there was sufficient evidence to support all the findings.

(*Kubon* v. *Kubon*, 51 Cal.2d 229, 232 [1] [331 P.2d 636];
*Brown* v. *Republic Productions, Inc.*, 26 Cal.2d 867, 870 [3, 4] [161 P.2d 796].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.