Dec. 4, 1928.                    1,693,633
S. R. ALLEN
CONVERTIBLE GO-CART AND CRIB
Filed April 1, 1927

A–2

UNITED STATES of America, Plaintiff-Appellant,

v.

**H. H. REISMAN, Defendant-Appellee.**

No. 77–2335.

United States Court of Appeals, Ninth Circuit.

Jan. 7, 1980.

**326**

Michael Kimmel, Washington, D. C., for plaintiff-appellant.

James A. Schmiesing, Newport Beach, Cal., for defendant-appellee.

Before TRASK and SNEED, Circuit Judges and EAST,* District Judge.

SNEED, Circuit Judge:

The United States filed suit in district court seeking actual damages for defendant Reisman's breach of a contract to purchase chromite ore, following a Board of Contract Appeals ruling that the liquidated damages provision was unenforceable. The District Court for the Central District of California dismissed the complaint and the United States appealed. We reverse and remand.

Jurisdiction is based on 28 U.S.C. § 1291.

## I.

### Factual Background.

This is a government contracts case in which the central issue is the availability to the government of a remedy in court for the total breach of the contract by the other party thereto.

The contract came into existence on August 14, 1970 when the defendant Reisman agreed to purchase from the General Services Administration (GSA) 803,527 tons of metallurgical grade chromite ore. The contract required that Reisman furnish to GSA an irrevocable sight commercial letter of credit for the full amount of the purchase price by August 24, 1970. Reisman failed to meet this deadline and obtained time extensions from the contracting officer on August 24, 1970 and August 27, 1970. The extension of August 27 expired on September 2, 1970. Again Reisman failed to furnish the required letter of credit and the

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

contracting officer mailed to Reisman a notice of default which stated that unless the default was cured by September 18, 1970 Reisman would lose his right to purchase the chromite and the government would exercise its rights to assess liquidated damages pursuant to General Condition 9 of the contract.[1]

Once more Reisman failed to furnish the letter of credit and, in exchange for Reisman's offer to increase the purchase price by $50,000, the government agreed to an extension of approximately 10 working days. On October 2, 1970, Reisman made his fourth request for an extension of time within which to supply the letter of credit. This was refused and the contracting officer's notice of September 2, 1970 became effective.

Thereafter in a timely manner Reisman exercised his request to appeal under the standard Disputes provisions of the contract.[2]

More than a year later, December 15, 1971, the GSA Board of Contract Appeals, after holding that it had jurisdiction to determine the enforceability of the liquidated damages provision of the contract, held that Reisman's failure to furnish the letter of credit constituted a default permitting the invocation of the liquidated damage provision and that under the facts of the case that provision was an unenforceable penalty.

All the while the chromite ore remained in the hands of the GSA. Finally, on August 18, 1974, GSA sold the ore to another for $353,026.10 less than Reisman had

1. General Condition 9 reads as follows:
   "If, after the award, the purchaser breaches the contract by failing to make payment as required by Condition 4 above, or by failing to remove the material as required by Condition 8 above, then the Government may send the purchaser a fifteen-day written notice of default (calculated from date of mailing), and upon purchaser's failure to cure such default within that period (or such further period as the Contracting Officer may allow), the purchaser shall lose all of the right, title and interest which he might otherwise have acquired in and to the material as to which a default has occurred. The purchaser agrees that if he fails to pay for the material or remove the same within the prescribed time, the Government at its election, and upon notice of default shall be entitled to retain or collect as liquidated damages a sum equal to 20% of the purchase price of the material on which the default has occurred. Whenever the Government exercises this election it shall specifically apprise the purchaser, either in its original notice of default or in separate subsequent written notice, that upon expiration of the period prescribed for curing the default the formula amount will be retained or collected by the Government as liquidated damages. The maximum sum, moreover, which may be recovered by the Government as damages for failure of the purchaser to remove the material and pay for the same shall be such formula amount. If the purchaser otherwise fails in the performance of his obligations thereunder, the Government may exercise such rights and may pursue such remedies as are provided by law or under the contract."

2. The appropriate paragraph of the contract reads as follows:

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the purchaser. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the purchaser mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Administrator of General Services. The decision of the Administrator, or his duly authorized representative for the determination of such appeals, shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the purchaser shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the purchaser shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

"(b) This 'Disputes' clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: Provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law."

agreed to pay. The government, acting on the belief that the Disputes Clause does not afford a means by which this difference could be recovered, merely presented its claim to Reisman for this sum through certificates of indebtedness issued by the General Accounting Officer under 31 U.S.C. §§ 71, 93. Reisman refused to pay and this suit was commenced by the United States against Reisman on July 29, 1976 in which it sought recovery of this difference plus 6% interest from June 18, 1971 to August 19, 1974.

Reisman's defense in the district court was that the Disputes Clause is applicable to claims such as the government presented and that as a consequence the government's complaint should be dismissed. The district court agreed and dismissed the complaint "for failure to exhaust administrative remedies." We believe this constituted error.

## II.

### Applicability of Disputes Clause.

■ The fundamental principle that governs the disposition of this case was stated in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 404, 86 S.Ct. 1545, 1551, 16 L.Ed.2d 642 (1966). It is that "[t]he power of the administrative tribunal to make final and conclusive findings on factual issues rests on the contract . ." That is, whether the government is entitled to bring this suit depends on the proper interpretation of the contract. If the contract, properly interpreted, requires the government to resolve its damage claim under the Disputes Clause, then the district court's dismissal was proper. However, if no such requirement exists, then we must reverse.

Only recently did we recognize this principle when in *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 230–31 (9th Cir. 1979) we said:

> "It is important to note, however, that not all contractual disputes are subject to the exhaustion requirement; exhaustion is required only for disputes 'arising under the contract.' *Utah Construction Co.*, 384 U.S. at 407, 86 S.Ct. 1545. The test

to be employed in distinguishing claims within the disputes clause procedure from those outside that procedure 'is whether the controversy is fully redressable under a provision of the contract other than the disputes clause itself.' *Bethlehem Steel Corp. v. Grace Line, Inc.*, 135 U.S.App. D.C. 81, 86, 416 F.2d 1096, 1101 (1969). In other words, a fact-dispute 'arises under the contract' only when the disputed fact is capable of complete resolution by a procedure specified in the contract:

> > 'In consequence claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure. *Id.*' "

Nothing in *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972) is to the contrary. That case merely held "that absent fraud or bad faith the federal agency's settlement under the disputes clause is binding on the Government; that there is not another tier of administrative review . . . ." *Id.* at 4, 92 S.Ct. at 1414. This holding presupposes that the contract made the Disputes Clause procedures applicable; it merely held that another tier of administrative review, such as the United States was insisting upon in the case, did not exist.

Turning to the contract between Reisman and the United States, the strength of Reisman's contentions is found in General Condition 9. *Supra* n. 1. He points out that his breach was a "failure to pay," which is a type of breach for which the remedy of liquidated damages is provided, and which is not the type embraced in the last sentence of General Condition 9 which reads:

> "If the purchaser otherwise fails in the performance of his obligations thereunder, the Government may exercise such rights and may pursue such remedies as are provided by law or under the contract."

It follows, Reisman asserts, that this suit was brought prior to the exhaustion of administrative remedies.

█ The difficulty with this interpretation of the contract is that it leads either to a useless resort to administrative remedies in this case, or to the result that, where the liquidated damages clause is unenforceable, no remedy, either administrative or judicial, is available. We hold that no such meaning was intended. The reasonable meaning and the one we hold was intended is that when the liquidated damages clause is determined administratively to be unenforceable the breach of "failure to pay" becomes one not subject to the Disputes Clause. As a consequence judicial remedies become available. The contract provides no administrative resolution under these circumstances; hence resolution must be provided by litigation. As indicated above, to refer this dispute back to the contracting officer could benefit Reisman, aside from the delay the referral would generate, only if the contract were interpreted administratively to provide no relief to the government following the failure of the liquidated damages clause to perform its function. To so interpret the contract would be unreasonable.

Our interpretation finds support in *Aerial Lumber Company v. United States*, 239 F.2d 906 (9th Cir. 1956) and *Century Investment Corporation v. United States*, 250 F.2d 139 (9th Cir. 1957). While these cases are distinguishable in several respects from this case, it remains true that both declined to make recourse to the contracting officer a condition precedent to a suit in court by the United States to recover damages for a total breach of the contract.

We therefore reverse and remand to the district court for further proceedings.

REVERSED and REMANDED.