**UNITED STATES of America, Plaintiff–Appellee,**

v.

**TRIPLE A MACHINE SHOP, INC.; Albert E. Engel, Defendants–Appellants.**

No. 87–1958.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1988.

Decided Sept. 14, 1988.

Robert K. Huffman, Miller & Chevalier, Chartered, Washington, D.C., for defendants-appellants.

William B. Lazarus, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WALLACE, REINHARDT and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

The United States, on behalf of the Department of the Navy, brought an ejectment action against the appellant, Triple A, under 28 U.S.C. § 1345, seeking possession of property the government had leased to Triple A, and damages.

The district court granted the government's motion for partial summary judgment, declaring that the Navy was entitled to immediate possession of the property and permanently enjoining Triple A from remaining on it. Triple A moved to vacate the order on two grounds: (1) the district court lacked subject matter jurisdiction, and (2) alternatively, the district court improperly applied the parol evidence rule.

The district court denied Triple A's motion to vacate and affirmed its earlier order. Triple A appeals. We hold that the expired lease does not provide a defense to this action for ejectment and affirm.

## FACTS AND PROCEDURAL HISTORY

The Hunters Point Naval Shipyard consists of approximately 965 acres of land located on San Francisco Bay. The United States Navy operated it until 1973. In 1975, the Navy decided to lease a substantial portion of the property, and thus issued a Request for Proposals (RFP) pursuant to 10 U.S.C. § 2667 (1983). After negotiations, the Navy awarded the lease to the defendant, Triple A Machine Shop, Inc., to begin July 1, 1976.

Proposed Article 4 of the Navy's RFP, entitled "TERM OF LEASE," provided for a five-year lease term and stated that the *lessee* would have the right to elect to extend the lease for additional five-year terms. During negotiations, Triple A proposed a different Article 4, which provided that the *government* would have the option to extend the lease for additional five year terms, with the lessee having a right of first refusal. Triple A explains that it proposed this change because the San Francisco City Assessor told it that the tax consequences for Triple A would be more favorable if the government held the right to elect to renew the lease, rather than Triple A.

The article Triple A proposed was incorporated into the lease signed between the Navy and Triple A as Article 3, "TERM." Article 3 of the lease stated:

> TERM—The term of the lease shall be for a period of five (5) years, commencing on [July 1, 1976]. In the event that the Government elects to lease the Property ... for one or more additional five (5) year terms, at least one hundred twenty (120) days before the expiration of the then current term of the lease the [Navy] will notify the Lessee in writing that the Government so elects.... [I]n the event that the Lessee desires to lease said property for a further five (5) year term, at least ninety (90) days before the

> expiration of the then current term of the lease the Lessee will give the Government written notice that the Lessee desires to lease the property for such an additional term. Thereafter, the Lessee will negotiate with the [Navy] all the terms and conditions of the lease for the additional term, including the rent to be paid.

The lease contract thus established a series of possible five-year terms, each succeeding term requiring a separate election and notice by the Navy.

The lease also included a provision for surrender of the property to the Navy at the expiration of the lease term. Article 25 stated:

> SURRENDER—At the expiration of the lease, or upon its prior termination, the Lessee shall surrender the leased property and each item thereof in the same condition as when received or in such improved condition as may result from any improvements made by the Government or by the Lessee, with the exception of ordinary wear and tear and loss or damage for which the Lessee is relieved of liability under the lease.

Approximately one year before the first five-year term was due to expire, the Navy and Triple A entered into negotiations for a second five-year term. These culminated in the parties entering into a supplemental lease for a second five-year term, to begin July 1, 1981. The supplemental lease added a sentence to Article 3 providing that "[t]he total duration of the lease, including the exercise of all options to renew, shall not extend beyond 30 June 1996."

Due to changes in the Navy's requirements, it decided not to extend the lease beyond June 30, 1986. The Navy relied on the lease term entitling it to not elect to renew the lease. Instead, in December 1985, the Navy offered Triple A a new lease for a portion of the originally leased property. Both parties acknowledged that the government's offer of a new lease was not a notification of its election under the existing lease to continue leasing the entire property for an additional five-year term.

Negotiations to enter into a new lease for a smaller portion of the property failed. The Navy notified Triple A that it intended to take possession of the Shipyard at midnight, June 30, 1986, the date the lease expired in accordance with Article 3. The government attempted to assume control of the Shipyard on that date, but Triple A refused to surrender the property.

The government filed a "Complaint for Ejectment and Writ of Possession" in the district court. The action was brought in ejectment for possession of the Shipyard in the absence of a lease agreement beyond June 30, 1986, and for damages for the period of Triple A's use and possession of the Shipyard beyond that date. The government's complaint asserted, and Triple A's answer admitted, that (1) the government owns the Shipyard; (2) Triple A and the Navy agreed that the Navy had not elected to lease the property for an additional term beginning July 1, 1986, as was the Navy's right under Article 3 of the lease; and (3) the parties have not entered into a lease agreement governing any period after June 30, 1986.

The government moved for partial summary judgment, seeking an order declaring it entitled to immediate possession of the Shipyard and a permanent injunction barring Triple A from remaining on the property; it reserved the damages question for later.

Triple A made two arguments in response to the government's motion. First, Triple A contended that what it characterized as a "collateral" agreement existed which created a genuine issue of material fact concerning whether the parties intended Article 3 to constitute their complete and exclusive agreement regarding renewal. In support of this argument, Triple A submitted the affidavits of several persons who had participated in the original lease negotiations on behalf of Triple A or the Navy. In the affidavits, these persons testified that the Navy accepted Triple A's Article 3 language with both parties' understanding that Triple A would remain at the Shipyard for three additional five-year terms, for a total lease term of twenty

years. These persons testified that the Navy did so knowing the favorable tax consequences to Triple A if the government held the exclusive right of election to renew. Triple A asserted that this demonstrated the existence of a collateral agreement that the Navy would elect to renew the lease for three additional five-year terms.

Second, Triple A asserted that the court lacked jurisdiction. It contended that the lease renewal issue was subject to the Disputes Clause of the lease, and therefore the government was required to exhaust the administrative procedures established by that clause before bringing suit. The Disputes Clause, Article 33, provides:

[A]ny dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing.... The decision of the Contracting Officer shall be final ... unless, within 30 days ... the Lessee ... furnishes to the Contracting Officer a written appeal addressed to the Secretary [of the Navy]. The decision of the Secretary ... shall be final ... unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.

On November 19, 1986, the district court granted the government's motion, holding that there was no dispute about renewal and the parol evidence rule precluded the factual contention concerning the "collateral" agreement. The court found that "[u]nder the plain language of Article 3, the Navy may elect ... *not* to lease the Shipyard for a further term.... In fact, the Navy did not elect to lease the Shipyard for a further term." The court also rejected Triple A's contention that the government was required to exhaust the administrative procedures of the lease's Disputes Clause prior to bringing suit.

On January 30, 1987, Triple A moved the court to vacate the November 1986 order and to dismiss the government's complaint

for lack of subject matter jurisdiction. For the first time, Triple A argued that the Contracts Disputes Act (CDA), 41 U.S.C. §§ 601–13 (1987), required the lease renewal issue to be decided by the Contracting Officer, and therefore the district court lacked subject matter jurisdiction under the CDA as well as the Disputes Clause.

On the same date, Triple A also filed an alternative motion to vacate the November 1986 order on the ground the court erred in applying the California, not federal, parol evidence rule. Triple A asserted that under the federal rule, the evidence offered by Triple A was admissible to show that Article 3 did not represent the complete agreement of the parties regarding lease renewal.

The district court held a hearing and denied Triple A's motion. The court found that neither the Disputes Clause of the lease nor the Contract Disputes Act applied and therefore the court had jurisdiction. Concerning the parol evidence rule, the court found: "Following either California or federal law, this court was correct in finding that the lease between Triple 'A' and the Government was the complete and full embodiment of their agreement." Triple A appeals.

The government and Triple A subsequently entered into a stipulation by which Triple A was obligated to vacate the Shipyard by July 1, 1987, which Triple A has done.

The issue before this court on appeal is whether the dispute as characterized in the government's complaint arises under the contract, and if it does not, whether Triple A can reshape the dispute in such a way that the district court was required to conclude that the dispute arose under the contract.

## STANDARD OF REVIEW

This court reviews de novo questions of subject matter jurisdiction. *Charley's Taxi Radio Dispatch Corp. v. Sida of Hawaii, Inc.*, 810 F.2d 869, 873 (9th Cir. 1987). The district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles. *SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 465 (9th Cir.1985).

## DISCUSSION

### A. Does the Disputes Clause Deprive the District Court of Jurisdiction?

The Disputes Clause at issue here is a standard clause in government procurement contracts. It requires that certain administrative review procedures be followed only for a "question of fact arising under this contract."

Not all disputes between these parties are subject to the contractual requirement that administrative remedies be exhausted; exhaustion is required only for disputes "arising under the contract." *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 230 (9th Cir. 1979) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 407, 86 S.Ct. 1545, 1553, 16 L.Ed.2d 642 (1966)). This court, in interpreting the same clause as is at issue here, has explained when a dispute arises under a contract, requiring exhaustion of administrative review procedures under the disputes clause:

> The test to be employed in distinguishing claims within the disputes clause procedure from those outside that procedure "is whether the controversy is fully redressable under a provision of the contract other than the disputes clause itself." *Bethlehem Steel Corp. v. Grace Line, Inc.*, 135 U.S.App.D.C. 81, 86, 416 F.2d 1096, 1101 (D.C.Cir.1969). In other words, a fact-dispute "arises under the contract" only when the disputed fact is capable of complete resolution by a procedure specified in the contract.

*Id. See also United States v. Reisman*, 611 F.2d 325, 328 (9th Cir.1980).

The standard disputes clause presupposes an ongoing contractual relationship and applies to disputes for which specific contractual provisions contemplate a remedy. Such clauses do not apply to a dispute that is inconsistent with an ongoing contractual relationship and that is not contemplated by a contract provision. *See,*

*e.g., Crown Coat Front Co. v. United States,* 386 U.S. 503, 505–06, 87 S.Ct. 1177, 1178–79, 18 L.Ed.2d 256 (1967) ("The 'arising under' claims subject to final administrative determination are those claims asserted under other clauses of the contract calling for equitable adjustment of the purchase price or extensions of time...."); *Utah Constr. & Mining,* 384 U.S. at 405–06, 86 S.Ct. at 1151–52; *Kyle Eng'g,* 600 F.2d at 231 n. 4 (In dicta, the court stated that the issues raised by *Kyle* of delay, changes, and termination, are covered by specific contract provisions and thus by the disputes clause.); *Zidell Explorations, Inc. v. United States,* 427 F.2d 735, 737, 192 Ct.Cl. 331 (1970); *Morrison–Knudsen Co., Inc. v. United States,* 345 F.2d 833, 837, 170 Ct.Cl. 757 (1965); *Harrington & Richardson, Inc.,* ASBCA No. 9839, 72–2, BCA ¶ 9507 (1972).[1]

The dispute between Triple A and the government does not arise under the lease contract. No clause in the lease, including the Surrender Clause, governs the situation here, in which the government has failed to renew the lease. No clause in the lease grants the government a remedy for unauthorized use and possession of the Shipyard beyond the expiration of the lease. The government's position is that by the plain language of Article 3, the lease has simply expired, it had no obligation to renew the lease, and it is entitled to eject its former lessee. Indeed, the government has clearly and unequivocally taken a position inconsistent with a continuing relationship with Triple A.

Because the dispute is not of the sort contemplated under the Disputes Clause, the government was not required to exhaust administrative remedies prior to bringing this action. Therefore, the Disputes Clause did not deprive the district court of jurisdiction.

### B. *Does the Contracts Dispute Act Deprive the District Court of Jurisdiction?*

The CDA requires administrative review of government claims against a contractor in four specified circumstances. 41 U.S.C. § 602, 605. The district court had jurisdiction to determine whether one of those circumstances applies here, and correctly determined none does.

The CDA applies to contracts for:

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or,

(4) the disposal of personal property.

41 U.S.C. § 602(a).

This court has already held that Triple A's lease with the Navy is not a contract under (2), for the procurement of services. *City & County of San Francisco v. United States,* 615 F.2d 498, 503–04 (9th Cir. 1980). Rather, Triple A first argues here that the lease is a contract for the disposal of personal property, and thus falls within section 602(a)(4). Triple A contends, and the government concedes, that a leasehold interest in real property can be considered an item of personal property. However, Triple A's argument that the lease granting the right to occupy real property for a specified period of time is a disposal of personal property distorts any difference between personal and real property. The contract involved here (the lease) is not for the "disposal of" a lease but for the "disposal of" the real property.

Triple A's second argument, that the lease should be construed as one for the disposal of personal property because it included various items of equipment, is similarly misguided. This court concluded in *City and County of San Francisco,* that "the purpose of the transaction was to lease the Hunters Point Naval Shipyard." *Id.* at 504. Thus, the court found that "[i]t would distort the essential character of the lease transaction to treat it as a contract for the procurement of services" because

---

1. This is consistent with California case law on ejectment. In *Paap v. Von Helmholt,* 185 Cal. App.2d 823, 829, 8 Cal.Rptr. 568, 571–72 (1960), the court stated: "Ejectment ... is not an action on the contract, ... for it is based on the *nonexistence* of the contract."

the "provisions regarding maintenance were minor and collateral, of the kind common to leases of improved property." *Id.* Similarly, treating this contract as one for the disposal of personal property would distort the essential character of the lease. An examination of the lease demonstrates its primary purpose is for the lease of a large piece of real property, buildings, and fixtures. Equipment contained in the lease is secondary to the purpose of the lease.

This dispute does not fall within the CDA, and thus the district court had jurisdiction.[2]

C. *Did the District Court Improperly Apply the Parol Evidence Rule?*

 Triple A contends the district court's injunction was based on the erroneous conclusion that the lease contract constituted the complete and final agreement between the parties. Triple A argues that the district court erred in not admitting parol evidence offered by Triple A which allegedly would have shown the existence of a collateral agreement between the parties. Triple A alleges that under this collateral agreement, the Navy agreed, at the time the original contract was negotiated, to elect to renew the lease after each five-year term, for a total of twenty years.

Both parties agree that federal law governs the interpretation of a government lease contract, including issues of parol evidence. Contracts to which the federal government is a party, and into which the government enters pursuant to federal law, are generally governed by federal law. *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944); *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *Prudential Ins. Co. of America v. United*

*States,* 801 F.2d 1295, 1298 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

In denying Triple A's motion to vacate the injunction, the district court properly applied the parol evidence rule as it has been developed under federal common law. *See, e.g., Sylvania Elec. Prod., Inc. v. United States,* 458 F.2d 994, 1005–06, 198 Ct.Cl. 106 (1972); *United States v. Waterman Steamship Corp.,* 397 F.2d 577, 579 (5th Cir.1968); *Butz Eng'g Corp. v. United States,* 499 F.2d 619, 628–29, 204 Ct.Cl. 561 (1974). Evidence of a collateral agreement may be admitted if (1) it does not contradict a clear and unambiguous provision of a written agreement, and (2) the parties did not intend the written agreement to be the complete and exclusive statement of their agreement. *Sylvania,* 458 F.2d at 1005–06 & n. 7. The alleged oral agreement does not meet either of these elements. The alleged agreement is not consistent with the parties' written contract. Rather, it directly contradicts the written agreement. The alleged agreement eliminates the government's right under the written agreement to elect to enter into additional five-year lease agreements. It would automatically extend the lease for two additional terms, while the plain language of Article 3 states that the lease expires at the end of the current term.

The district court did not abuse its discretion in refusing to admit the parol evidence and issuing the injunction.

CONCLUSION

We hold that the dispute as presented by the government's ejectment action does not arise under the contract. Neither contention of the defendant reshapes the dispute so that it does. The district court had

---

**2.** The case of *Forman v. United States,* 767 F.2d 875 (Fed.Cir.1985) is distinguishable. In *Forman* the issue concerned whether a contract was one for the "procurement of property, other than real property in being" under the CDA, 41 U.S.C. § 602(a)(1). This is not the section under which Triple A alleges its lease falls, because here the government is not procuring property; it already owns the property. In *Forman,* the Formans entered into a contract with the

government by which they agreed to construct a postal facility in exchange for the government's agreement to lease the facility. The court found that since the CDA clearly applies to construction contracts, the CDA exclusion of "real property in being" did not apply to a construction-plus-lease contract. In contrast, the contract at issue here was simply for the lease of real property.

subject matter jurisdiction of the government's action for ejectment of Triple A and possession of the Hunters Point Naval Shipyard. It did not abuse its discretion, nor did it erroneously apply the law, in refusing to admit parol evidence and in granting a permanent injunction.

AFFIRMED.

REINHARDT, Circuit Judge, concurring:

I concur in the majority's opinion. I write separately, however, in order to clarify the basis for my concurrence in section A, the part of the opinion that discusses the disputes clause.

Notwithstanding the broad language of the standard disputes clause,[1] that clause, unlike the typical arbitration clause, has consistently been interpreted in a very narrow manner. It is not possible to understand the workings of the disputes clause without referring to other provisions of the contract. In addition to the disputes clause, government contracts often contain substantive clauses which set forth specified remedies and procedures governing particular claims that may be made by the contracting parties. For example, a substantive clause may provide for increasing both time and compensation if a construction contractor encounters subsurface conditions materially different from those contained in the specifications, *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 397 n. 1, 86 S.Ct. 1545, 1547 n. 1, 16 L.Ed.2d 642 (1966), or may authorize the collection of liquidated damages if a party fails to purchase the goods it contracted for, *United States v. Reisman*, 611 F.2d 325, 327 n. 1 (9th Cir.1980). Substantive clauses often provide means for modifying the terms of the contract when problems arise, thus avoiding the necessity of damage actions. The disputes clause requires that disagreements covered by those substantive clauses be presented to the contracting officer, and then, if necessary, appealed to a higher official, here the Secretary of the Navy.

When a contracting party's claim and the remedy it seeks are both covered by a substantive clause, the cases are clear: the party must exhaust the remedies set forth in the disputes clause before filing a suit. *See, e.g., Crown Coat Front Co. v. United States*, 386 U.S. 503, 505–06, 511–14, 87 S.Ct. 1177, 1178–79, 1181–83, 18 L.Ed.2d 256 (1967). The cases are equally clear that when no substantive clause provides for how an alleged error, omission or breach is to be handled the disputes clause is not applicable and the claim can be brought directly to the district court. *See, e.g., Utah Construction*, 384 U.S. at 403–18, 86 S.Ct. at 1550–58; *Kyle Engineering v. Kleppe*, 600 F.2d 226, 230–31 (9th Cir. 1979).

The question the cases do not squarely answer is whether a party must exhaust its remedies under the disputes clause if its claim is covered by a substantive clause but the remedy the party seeks is not—for example, where the contract offers only adjustment in payment as a remedy for government delay, but the party argues that the delay was so severe that the appropriate remedy is rescission or termination. *Cf. Reisman*, 611 F.2d at 329 (disputes act should not be interpreted to require "a useless resort to administrative remedies"). Similarly, while it is more than plausible to suggest that the disputes clause covers only disputes that are a part of an "ongoing contractual relationship", maj. op. at 583, the law on this point is not entirely clear. *See Kyle*, 600 F.2d at 231 n. 4 (stating, in *dictum*, that the issue of termination would be subject to the disputes clause). However, in the present case, we need not reach either of those questions. Here, Triple A's contract does not contain a clause establishing procedures *or* remedies governing the kind of claim that Triple A has brought. Thus the parties' disagreement falls squarely within the rule set forth in *Utah Construction* and *Kyle*, and the disputes clause is not applicable. The district court was correct

---

**1.** *See, e.g., United States v. Reisman,* 611 F.2d at 327 n. 2 ("Except as otherwise provided in this contract, any dispute concerning a question of fact under this contract ...").

in its decision to retain jurisdiction over the Government's suit.

